## Sharon W. Wells v. Stephen J. Wells

[549 A.2d 1039]

No. 86-306

Present: **Allen, C.J., Hill, Peck and Gibson, JJ., and Barney, C.J. (Ret.),
Specially Assigned**

Opinion Filed May 6, 1988

*William M. Dorsch* and *Cynthia Heslen* of *Dorsch, Hertz &
Wesley*, Brattleboro, for Plaintiff-Appellant.

*Thomas W. Costello* and *Ardith L. Baldwin* of *Thomas W.
Costello, P.C.*, Brattleboro, for Defendant-Appellee.

**Hill, J.** Plaintiff appeals a May 23, 1986, modification order
that awarded custody of her two minor daughters to defendant,
their father. This order modified an original order granting cus-
tody to plaintiff as part of a divorce decree dated November 28,
1978. We reverse and remand for a rehearing.

Under the provisions of the original decree, defendant was
given the right to visit his daughters "on weekends of his choice
consistent with the health of the children." Defendant exercised
his visitation rights only sporadically until his remarriage in 1983.

When defendant sought to invoke the full extent of visitation rights, the parties were unable to agree upon a visitation arrangement under the terms of the original decree, leading to a motion to enforce the order filed by defendant. The parties thereafter stipulated to an amended visitation provision (dated November 21, 1983) whereby plaintiff retained custody of both children, and defendant was given more specific visitation rights.

Sometime in November, 1984, plaintiff refused to allow any further visitation unless defendant would agree to family counseling due to alleged problems the daughters were having with existing visitation. Defendant refused and again moved to enforce the amended visitation order. Plaintiff responded with a motion to modify the amended visitation order.

At hearings held before Judge Hudson in February and April of 1985, the parties, their children, and several other witnesses testified. In its order, filed May 10, 1985, the court denied plaintiff's motion for modification, found plaintiff in contempt for terminating defendant's visitation rights, and ordered her to pay defendant's attorney's fees to purge the contempt. The court rejected plaintiff's argument that the children did not wish to visit their father and found that they enjoyed a strong and loving relationship with him. Any discontent on the part of the children, according to the court, was attributable to the strife between the parents. Finding an absence of any legitimate basis for plaintiff's refusal to allow visitation, the court ordered visitation on the terms of the amended order to commence May 11, 1985.

Defendant made telephone arrangements with plaintiff on May 15th to travel to Georgia Plains from his home in St. Johnsbury in order to pick up his daughters for visitation on the weekend of May 25th. Upon his arrival that weekend, he discovered that plaintiff's house had been vacated, with no indication of where plaintiff and the children had gone. A letter from plaintiff arrived at his home that day, however, informing him that the family was relocating and would tell him where in a "reasonable time." Defendant did not learn of the whereabouts of plaintiff and the children until July 15, 1985, when he received a letter from plaintiff informing him that the family had settled in the Seattle, Washington area. The letter stated that the family had chosen to move to Seattle primarily because of better employment opportunity for plaintiff and her second husband.

On June 7, 1985, defendant filed a motion for a contempt order and for modification, seeking custody of the two children. On May 19, 1986, the court (Judge O'Dea presiding) held a hearing on these motions and issued an oral decision transferring custody of the two children to defendant. The court found that both plaintiff and defendant were fit and suitable parents, but that plaintiff's move to Seattle was carried out for the express purpose of depriving defendant of his visitation rights and the daughters of any relationship with their father. Stating that its decision was "based solely and exclusively on the best interest of these two children," the court concluded that the childrens' welfare would be best served by transfer of custody to the defendant. Plaintiff was given the right to have the children visit for a three-month period in the summer, as long as she continues to reside in Washington state.

Plaintiff raises three arguments on appeal: (1) that the evidence and findings do not support the court's conclusion that a "real, substantial, and unanticipated change of circumstances" had occurred; (2) that the findings do not support the conclusion that the best interests of the children would be served by a transfer of custody; and (3) that the trial court's findings were inadequate to support a change of custody.

Although findings of fact were not requested by the parties, the trial court made oral findings on its own initiative. At the outset, we note that these findings were imprecise and failed to deal adequately with all of the issues. The court's failure to make adequate findings of fact and conclusions of law makes our review of the issues substantially more difficult. *Harrigan* v. *Harrigan*, 135 Vt. 249, 250, 373 A.2d 550, 551 (1977). In a custody modification case such as this, there are typically numerous, subsidiary issues which are vigorously contested, relating to whether a change of circumstances has occurred and whether a change of custody would be in the best interests of the child. Comprehensive findings and conclusions on these questions would provide an invaluable aid to this Court in determining whether the legal standards governing custody modification have been met.

On the merits, the plaintiff first argues that because the court found that both plaintiff and defendant were fit and suitable parents capable of providing their children with the love, education, care and shelter that they need, the court could not conclude that there had been a real, substantial and unanticipated change of

circumstances. Defendant responds by relying on the court's finding that plaintiff "has proven herself unfit in one particular regard, [in] that she is willing to deprive her two children of their father . . . ." Defendant maintains that plaintiff's efforts to prevent visitation and her unannounced move to Washington state provide adequate support for a finding of changed circumstances.

■ A threshold showing of a real, substantial and unanticipated change of circumstances is necessary before a court may examine the merits of the parties' claims and reconsider the best interest of the child. *Hayes* v. *Hayes*, 144 Vt. 332, 335-36, 476 A.2d 135, 138 (1984). As this Court has previously recognized:

> There can be no fixed standards to determine what constitutes a substantial change in material circumstances. The court is guided by a rule of very general application that the welfare and best interests of the children are the primary concern in determining whether the order should be changed.

*Gerety* v. *Gerety*, 131 Vt. 396, 402, 306 A.2d 693, 695 (1973). The decision as to whether a change of circumstances has been established is within the discretion of the lower court. See *Hayes*, 144 Vt. at 337, 476 A.2d at 138.

This Court has never reviewed a changed circumstances ruling based on a custodial parent's obstruction of visitation. The courts of other jurisdictions, however, have held that willful, repeated interference with visitation rights may constitute a legally significant change of circumstance. See *Birge* v. *Birge*, 34 Or. App. 581, 585, 579 P.2d 297, 298 (1978); *Rosenberg* v. *Rosenberg*, 350 Pa. Super. 268, 272, 504 A.2d 350, 352 (1986). As the *Rosenberg* court stated: "To deliberately sabotage visitation rights calculated to serve the best interests of children bears adversely on the fitness of the custodial parent, whose conduct most certainly does not go unnoticed by the children." *Id.* at 273, 504 A.2d at 352-53. On the record before us, we cannot say that the lower court abused its discretion in finding a substantial change of circumstances.

■ On the other hand, we find significant problems with the lower court's ruling on the merits of the custody question. "Willful interference with court ordered visitations, no matter how deplorable, cannot be made the basis for an 'automatic' change of custody." *Id.* at 274, 504 A.2d at 353. Here, the lower court abused its discretion by ordering a change of custody without considering whether the harm caused by plaintiff's obstruction of

visitation outweighed the harm that could be caused by a change of custody. This Court and others have recognized the desirability of stability in custody arrangements because of the potential of harm due to shuttling the children between parents. *Hayes*, 144 Vt. at 336, 476 A.2d at 138; *Rice v. Rice*, 415 A.2d 1378, 1383 (D.C. 1980); *Jordan v. Jordan*, 50 Md. App. 437, 443, 439 A.2d 26, 29 (1982).*

In the instant case, the court made no reference to the fact that the two daughters had resided continuously with their mother since the divorce in 1978, when their ages were three and six. Nor did it refer to the fact that the children had had little contact with their father, by his choosing, for the first five and one-half years following the divorce. The court failed to discuss the possible effect of the removal of the children from the plaintiff's household, the extent to which the children have adjusted to their new home in Washington, or the children's preferences. Because there is no indication that the court considered these questions, it was error to order a change of custody.

■ We are in steadfast agreement with the trial court's conclusion that it is against the public policy of this state to limit or destroy the relationship between parent and child. This Court, in *Breznick v. Breznick*, 127 Vt. 80, 82-83, 238 A.2d 643, 645-46 (1968), stated that

> the law attempts to preserve, as far as it can, the relationship between each parent and child, in spite of the legal separation. Unless some sufficient opposing cause, relating to the welfare of the child, is shown, a visitation privilege of some sort is the right of a parent as a matter of course.

Nevertheless, the right of visitation cannot be enforced in a vacuum; it must be reconciled with the welfare of the child. We re-

---

* The importance of stability in the lives of children of divorced parents is also widely recognized in both legal and child developmental literature. See J. Goldstein, A. Freud & A. Solnit, Beyond the Best Interests of the Child 31, 37-39 (1973); Cole, *The Issue of Stability in the Modification of Custody Decisions: Factor or Determinant?*, 29 Vill. L. Rev. 1095, 1115-18 (1984); Watson, *The Children of Armageddon: Problems of Custody Following Divorce*, 21 Syracuse L. Rev. 55, 71-72 (1969). In fact, the policy in favor of finality of custody decrees, as a way of insuring continuity in the lives of children of divorced parents, is at the root of § 409 of the Uniform Marriage and Divorce Act, which has been adopted in nine jurisdictions. See Uniform Marriage and Divorce Act § 409, Commissioner's Note, 9A U.L.A. 212 (1979).

verse and remand for a rehearing of defendant's motion to modify.

We also note that, at least in some circumstances, obstruction of court-ordered visitation can be redressed by means of contempt proceedings. 15 V.S.A. § 603. Here, the lower court failed to rule on defendant's motion for a contempt order, and the proceedings on remand should also include a ruling on that motion. Because of our disposition, it is unnecessary to address plaintiff's other arguments.

*Reversed and remanded.*