2004 VT 106

## Richard SUNDSTROM v. Bobbi Jo SUNDSTROM

[865 A.2d 358]

No. 03-423

¶ 1. October 21, 2004. Mother appeals from the family court's order modifying parental rights and responsibilities, and awarding custody of the parties' two minor children to father. The court found that mother's "ongoing, intentional, mean-spirited violations" of court orders concerning parent-child contact constituted a material and substantial change of circumstances, and the harm caused by mother's obstruction of visitation outweighed the harm that could be caused by a change in custody. The court thus concluded that the children's best interests required that they be removed from mother's home and placed with father. On appeal, mother argues that the court abused its discretion in awarding custody to father, and committed various procedural mistakes that constitute reversible error. We affirm in part, and reverse in part.

¶ 2. To place the court's June 2003 order in its proper context, we first review the procedural history of this case. Father and mother divorced in September 1998. At the time of their divorce, they agreed that mother would have sole parental rights and responsibilities over the parties' two children, JoAnn, born in May 1992, and Cameron, born in April 1994. They also agreed that father would have contact with the children every other weekend, two weeks in the summer, and shared holidays. Pursuant to the final divorce order, father was also awarded "reasonable telephone contact" with the children, which "[u]nder normal

circumstances ... should be one telephone call per day."

¶ 3. Mother and father's relationship deteriorated significantly after the divorce, and in 1999, father filed a motion to modify parental rights and responsibilities. Although the court denied the motion, it found that mother had been engaging in "a pattern of behavior" that had frustrated father's ability to have parent-child contact. The court found the record replete with examples of mother's negative behaviors, including her repeated interference with father's attempts to contact the children by telephone. The court explained that, on those occasions when father was able to reach the children, mother would typically be in the background telling the children what to say and often making snide remarks about father or his girlfriend. The court also found that mother had involved the children in adult issues, and she had sabotaged the children's relationship with father's new girlfriend. Mother acknowledged that she needed to get better control of her anger.

¶ 4. The court found that, "remarkably," mother's negative behavior had not yet poisoned the children's relationship with father, although it found that her behavior had begun to have an adverse impact on the children, particularly JoAnn. The court agreed with expert testimony "that a continuation of these unacceptable behaviors by mother could bring about significant erosion of father's relationship with the children and have negative long-term effects on the children."

¶ 5. Based on its findings, the court concluded that mother had substantially interfered with father's relationship with the children. The court concluded, however, that it was not in the children's best interests to transfer custody to father. The court explained that the children had not yet been alienated from father, although the potential existed. Addition-

ally, the court found that mother had always been the children's primary caretaker, and in all other respects was a fit parent. The court indicated its belief that mother was capable of changing her behavior. The court also found it significant that father's job required him to be away from home during virtually all of the children's waking hours, and thus, if it transferred custody to father, father's girlfriend would effectively become the children's primary care giver. Therefore, on balance, the court concluded that it was not in the children's best interest to transfer custody to father.

¶ 6. The court warned mother, however, that it viewed the situation as extremely serious, and that if mother persisted in her negative behavior, "the court will have no choice but to change custody in the children's best interests." The court ordered mother to stop denigrating father and his girlfriend in the children's presence, and stop interfering with the children's relationship with father and his girlfriend. The court also ordered mother to participate in counseling to address her anger and bitterness resulting from the divorce, and her refusal to accept that father's girlfriend was now part of the children's lives.

¶ 7. Problems between mother and father continued, and both parties filed numerous motions with the court. At father's request, the court entered several orders setting forth a more specific telephone contact schedule.[1] In 2001,

---

[1] Mother appealed from one of these orders to this Court, arguing that the family court had modified the final divorce order without making a finding that there had been a real, substantial and unanticipated change in circumstances. We affirmed, finding that the record established that there had been a change in circumstances, but concluding that the

father again moved to modify parental rights and responsibilities, complaining that mother continued to interfere with his relationship with the children. In July 2001, after a hearing, the court denied father's motion. The court concluded that all of father's complaints of interference arose from mother's refusal to acquiesce to his demand for a larger role in the care of the children than was permitted by the final divorce order. The court found no change in circumstances that would warrant a change in custody. We affirmed the family court's order in October 2002, although the appeal did not reach the merits.[2]

¶ 8. After this Court's entry order, and in light of the over one hundred post-judgment motions that the parties had filed, the family court asked the parties to indicate which issues remained to be addressed. In letters to the court, both father and the attorney for the children indicated that father's motion to modify parental rights and responsibilities, which had been filed on March 6, 2002, remained outstanding. Both parties also indicated that a motion for contempt that had been filed by guardian ad litem Sandy Hutchins on February 14, 2002, remained to be heard as well. On Decem-

____

appeal was moot because the telephone contact schedule at issue had been modified by a later order.

[2] The family court's 2001 order was signed only by the presiding judge. The two assistant judges later filed a notice indicating their disagreement with the presiding judge's findings of fact, and the new presiding judge sua sponte struck the court's order and set the matter for a retrial. Mother appealed to this Court. We reversed the order that called for a retrial, and reinstated the family court's 2001 order after concluding that father had waived his right to challenge this decision by failing to appeal.

ber 13, 2002, the court issued an entry order stating that these motions would be considered at the motions hearing. In a pro se filing dated December 18, 2002, mother asked the court to dismiss father's motion to modify. The court denied mother's request on January 13, 2003. On the same date, the court issued an entry order indicating that four new motions that mother had filed on December 30, 2002 would be heard with the motions that had already been scheduled. In January 2003, mother filed another pro se document asking the court if a revision of a family court order required an unanticipated and substantial change of circumstances, and if so, what the court believed these changes were so that she could prepare for the court hearing. The court denied mother's request, explaining that it did not provide legal advice to the parties.

¶ 9. A hearing on the pending motions was held in April 2003, and both parties appeared pro se. The court divided the time allotted for the hearing between the parties. Father went first, and after his direct testimony, mother sought to cross-examine him. The court informed mother that it would allow father to present all of his evidence, and then mother and the attorney for the children could cross-examine him. Mother cross-examined father after he had presented his case. Guardian ad litem Sandy Hutchins, who had worked extensively with mother and father, but who had not met with the children, was present at the hearing. At the hearing's close, the court asked her if she had any comments. The guardian replied that her recommendation "then and now is that [father] have full custody of his children." Mother did not object to the guardian's testimony.

¶ 10. In a June 2003 order, the court granted father's motion to modify parental rights and responsibilities. The court found that since father's last motion to modify, mother had continued to inter-

fere with father's telephone contact with the children. The court explained that when father tried to call the children every day, as permitted by the divorce decree, one of several things happened: there was a busy signal; the phone would go unanswered; mother would answer and say the children were unavailable; the call would be automatically forwarded to a business; or mother would answer and tell father that until he paid her all the money she felt she was due, he would never get to talk to the children. The court found that when father had spoken to the children, he heard mother on many occasions in the background telling the children what to say. Mother also stated to father, when he asked her when a good time to call would be, "There is no good time to call. Stop calling us and move on with your life."

¶ 11. The court found that in the weeks before the hearing, a new development had occurred: mother would place the children on the phone and tell father that he needed to get a job and pay mother. Father presented two tapes of the children making the following statements to him. "Hi Dad, leave us alone. Pay your child support. Get a job, OK?" In March 2003, JoAnn stated "Pay your support, Dad." The court found it beyond doubt that mother told the children to make these statements to father, and explained that it was "entirely inappropriate for a parent to place a child in the middle of the parental dispute over child support or maintenance." The court also found that mother had attempted to keep father from attending First Communion for one of the children several months prior to the hearing by refusing to tell father when the ceremony was scheduled. Additionally, the court found that mother had filed a form with the children's school that listed her boyfriend as the children's stepfather, which meant that father was not permitted to obtain information about the children.

¶ 12. Based on the evidence presented, the court found it "crystal clear" that mother had intentionally and repeatedly sabotaged father's ability to have telephone contact with the children. She had also intentionally attempted to interfere with father's ability to obtain school information and to participate in their religious upbringing. The court found mother's demeanor in court to be snide and disrespectful to both father and the court, and stated that mother clearly had a deep level of hostility that had not receded over the five years since the parties' divorce. The court found that mother was unable to place the children's needs ahead of her own anger and vindictiveness.

¶ 13. Based on its findings, the court concluded that father had demonstrated a material and substantial change in circumstances. It explained that mother had repeatedly, continuously, and intentionally violated prior orders of the court. Mother had been warned on prior occasions that her behavior could lead to a change in custody, yet she continued to engage in this behavior. As the court explained, mother's "ongoing, intentional, mean-spirited violations of prior court orders concerning parent-child contact" constituted both a contempt of court and a material and substantial change in circumstances.

¶ 14. The court next addressed whether the harm caused by mother's obstruction of visitation outweighed the harm that could be caused by a change of custody. The overriding issue, the court explained, was the best interests of the children. The court concluded that not only had mother repeatedly and continuously interfered with father's contact with the children, she had also intentionally worked to alienate the children from father by telling them that he had not been paying all of his child support. She further alienated them by placing them in the middle of that dispute by

having them say mean things to father over the phone. The court found that these attempts at parental alienation weighed against mother being the children's sole custodian. The court concluded that the damage to the children from mother's involvement of them in her disputes with father was extremely harmful to the children, and to the children's relationship with father.

¶ 15. The court recognized that the children had resided with mother since the divorce, and that the stability this provided was valuable to them. However, the court concluded that the harm caused by mother's manipulation and alienation of the children, in pursuit of her desire to punish father, outweighed any benefit that would exist from the children remaining in her home. The court found that mother's behavior demonstrated that she placed her own emotional needs ahead of the children's needs to their significant detriment, and thus, her home could not be considered a positive or supportive environment for the children.

¶ 16. In contrast to mother, the court found that father had maintained a calm and reasonable demeanor in court and with the children, in spite of mother's mistreatment of him and his frustration with being unable to contact the children. The court concluded that father showed an understanding of the damage that this situation was inflicting on the children, and an appropriate concern for their well-being. He did not involve the children in disputes as mother had done. The court thus concluded that father was more capable than mother of providing the children with the guidance they needed, meeting their developmental needs, and fostering a positive relationship with mother. The court explained that mother had been warned that her ongoing negative behavior was likely to lead to a loss of custody, and the court found that, despite these warnings, her improper behavior continued, and in fact, had esca-

lated. The court therefore concluded that the best interests of the children required that they be removed from such an environment.

¶ 17. In its order, the court also addressed mother's motions to enforce prior child support and maintenance orders. The court found that father's financial situation had changed significantly since the prior orders were issued. It explained that father had lost his long-term employment in January 2003, and he was currently working part-time in anticipation of a full-time position becoming available in his field. The court found that father's income averaged $316.65 per week, and that mother's live-in partner now contributed between $500 to $1000 or more per month to mother's household. The court found that these facts constituted a substantial and unanticipated change of circumstances justifying modification of maintenance and child support. The court explained that father had paid his child support regularly until he lost his job. Since that time, he had made partial payments. The court found that these payments were reasonable, and concluded that father did not owe past child support to mother. For the same reasons, the court found that father could not afford to pay mother $141.62 in maintenance, and it reduced his payments to $50.00 per week. The court noted that when father obtained full-time employment, he would need to inform mother and the court.

¶ 18. Mother filed a motion for a new hearing, arguing that the court erred in evaluating the children's best interests without the input of a guardian ad litem who had met with the children. She asserted that a guardian's input was necessary to determine whether her conduct had actually been harmful to the children, whether it had actually undermined their relationship with father, and whether uprooting the children would be

harmful to them. The court denied the motion. This appeal followed.

¶ 19. We start with mother's arguments that the family court committed procedural errors that require us to set aside all or part of its decision. Specifically, mother asserts that the court committed reversible error by failing to notify her of the matters to be considered at the hearing, failing to afford her a fair opportunity to cross-examine father, improperly allowing the guardian ad litem to express an opinion regarding the best interests of the children, and retroactively modifying child support and maintenance in the absence of a motion to modify. As discussed below, we find all but one of these arguments without merit.

¶ 20. First, we reject mother's assertion that the family court's decision should be reversed because she was not provided notice that father's motion to modify would be considered at the hearing. Mother's argument is based on two notices of the hearing. Following the rotation of a new judge into the county and this Court's last decision on appeal, the family court asked the parties to specify which motions required a hearing.[3] Father and the children's lawyer specified the pending motions, including a

motion to modify custody based on mother's continuing interference with telephone visitation, and the court ordered that these motions, and one filed by mother, be set for a hearing.[4] Thereafter, mother filed additional motions, and the court issued a further notice of the motion hearing, stating that the new motions, which were itemized, would "be heard with the currently scheduled hearing." The hearing had to be rescheduled, and a new notice was sent to show the rescheduling of the hearing, but it listed only the additional motions filed by mother.[5] On that basis, mother argues

---

[3] The docket entries indicate that at a status conference immediately following this Court's decision reinstating the 2001 order, the family court ruled that all outstanding motions were moot. Apparently concerned with the accuracy of that assessment, the court asked the parties to specify which motions were alive and needed to be heard. The motion to modify custody was filed in 2002, well after the denial of the earlier motion to modify, and it was based on conduct that occurred after the 2001 decision. As a result, the court ordered that this motion be heard.

---

[4] Mother suggests that there is no showing that this order was mailed to her. This would be true of any court order. In any event, by filing the "affidavit" discussed in footnote 5 below, mother showed that she knew that the motion to modify would be considered by the court. She also filed a motion to dismiss the custody modification motion, which the court denied, which shows her awareness of the pending motion.

[5] The notices were computer generated on a standard form. The notice sent after mother filed the additional motions was apparently intended to clearly specify that the new motions would be heard along with those filed earlier. The bottom of the notice indicated that the specified motions "will be heard with the currently scheduled hearing." Mother clearly knew at that point that the motion to modify custody was still pending because she thereafter filed an "affidavit" asking the court to specify the unanticipated change of circumstances. As specified by the family court in its December order, the only motion for modification filed by father that was still pending was that requesting a change of custody.

The final notice, sent three weeks later, struck the line that stated that the new, specified motions would be heard with

that she did not receive notice that the motion to modify custody would be considered at the hearing.

¶ 21. It was apparent from the beginning of the hearing that the family court was considering the motion to modify. Indeed, it was apparent that the motion to modify was the central subject of the hearing. For example, in her opening statement, the attorney for the children indicated that she would address the motion to modify custody first. Mother did not claim that she was not provided notice that the motion would be considered, nor did she object to the court's consideration of the motion to modify. Mother did not raise this claim of error in her motion for a new hearing. We have consistently held that to preserve an issue for appeal, a party must "present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." *In re White*, 172 Vt. 335, 343, 779 A.2d 1264, 1270 (2001) (internal quotation marks and citation omitted). Mother waived this claim of error by failing to raise it below.

¶ 22. Mother also waived her argument that the family court committed reversible error by allowing the former guardian ad litem to express an opinion regarding the children's best interests. It appears from the record that the former guardian attended the hearing because the court was considering a motion for contempt that she had filed.[6] Although

the earlier ones and substituted "***RESCHEDULED FROM 2/14/03 DUE TO COURT SCHEDULE*****." Except for the list of motions, which was also on the earlier notice, there is nothing to suggest that the scope of the adjourned hearing had been narrowed from that of the earlier hearing.

[6] The court had terminated the appointment of the guardian approximately two months before the hearing, finding it

she was not sworn as a witness and had no recent involvement in the case, she was asked by the court for her position; the guardian supported modification of custody because of mother's continuous violation of the parent-child contact order. In response to a question from the court, the guardian stated that she had never met personally with the children. Following the family court's decision, mother moved for a new hearing in part because the "GAL in this case ... HAS NEVER met the children." Mother asked that the court hear from a guardian ad litem "on how harmful it will be to the children to be uprooted."

¶ 23. Because mother did not object to the guardian's statement at the hearing, she cannot raise its propriety on appeal. *Damone v. Damone*, 172 Vt. 504, 514-15, 782 A.2d 1208, 1216-17 (2001) (father's failure to object to admission of guardian ad litem's testimony at hearing precluded review of claimed error on appeal). In any event, the court did not err in allowing this statement. Rule 7(d) of the Rules for Family Proceedings provides that "[t]he guardian ad litem shall state to the court a position and the reasons therefor, which reasons shall be based upon the evidence in the record, but shall not testify as a witness." The guardian's statement was entirely consistent with the rule because she did not testify and her position was based on evidence in the record. Indeed, mother's complaint that the guardian violated the rule by not meeting with the children, see *id.* ("In fulfilling this function, each guardian ad litem shall meet with the child ...."), undercuts her argument that the statement was improper. Although the guardian's appointment had been terminated, she was properly in court to support a

unnecessary to have a guardian ad litem when the children were represented by court-appointed counsel.

contempt motion that she had filed with respect to parent-child contact, and the court properly requested her position on it. We also find the statement harmless. Although the family court refers to the guardian's statement in its order, its findings demonstrate that it did not base its decision on that statement. Instead, the record reflects that the court reviewed all of the evidence in arriving at its conclusion that a transfer of custody was in the children's best interests.

¶ 24. Mother next argues that the court erred by failing to afford her a fair opportunity to cross-examine father. The record does not support this argument. The trial court is authorized to exercise reasonable control over the mode and order of interrogating witnesses so as to make the interrogation and presentation orderly and effective for the ascertainment of truth and avoid needless consumption of time. V.R.E. 611(a). Faced with two pro se litigants, the court divided the time scheduled for the hearing between the two parties. The court informed mother that she could cross-examine father at the close of his evidence, which she did. Indeed, we note that other than alleging that the family court's action was "manifestly unfair," mother does not identify any specific harm that resulted from the court's decision to delay the cross-examination. On the contrary, the record shows that mother had a fair opportunity to cross-examine father at the close of his case, and we find no error.

¶ 25. Finally, mother argues that the court erred by retroactively modifying father's child support and maintenance obligations in the absence of a motion to modify.[7] The family court may modify a

---

[7] The court reduced the spousal maintenance obligation and remanded to the magistrate to set a new child support obligation in light of the changed financial circumstances of the parties and the

child support order on either party's motion, and upon a showing of real, substantial and unanticipated change of circumstances. 15 V.S.A. § 660(a). A child support order may be modified only as to installments that accrued after a motion to modify has been filed. 15 V.S.A. § 660(e); *Towne v. Towne*, 150 Vt. 286, 288, 552 A.2d 404, 406 (1988). Based on evidence presented at the hearing, the court found that father's loss of employment and the financial assistance that mother was receiving from her live-in boyfriend constituted a real, substantial and unanticipated change in circumstances. Based on this finding, the court retroactively modified father's child support obligation as of January 1, 2003, the date that father became unemployed. It appears from the record, however, that father did not file a request for a new child support calculation until February 12, 2003. Pursuant to 15 V.S.A. § 660(e), the court's modification is effective only as to father's obligations after that date. We therefore reverse that portion of the court's order that modified father's obligation between January 1, 2003 and February 12, 2003.

¶ 26. Although we agree that the court went too far back in retroactively modifying husband's child support obligation, we reach a different conclusion with respect to the retroactive modification of father's spousal maintenance obligation. Pursuant to 15 V.S.A. § 758, the court may modify a maintenance award on motion of either party and upon due notice, where there has been a real, substantial and unanticipated change in circumstances. The record indicates that in November 2002 father filed a pro se letter with the court requesting that the court deny mother's motion to enforce, and change permanent spousal maintenance to tem-

---

custodial change. Mother has not appealed these prospective orders.

porary spousal maintenance, and end these payments. Father stated that he could no longer afford to pay maintenance due to his loss of full-time employment. Based on evidence presented at the hearing, the court found that a real, substantial and unanticipated change of circumstances had occurred as of January 2003, and it retroactively modified father's spousal maintenance obligation as of this date. In light of the request made by father, and the court's finding of changed circumstances, we find no abuse of discretion in the court's retroactive modification of father's spousal maintenance obligation.

¶ 27. We next consider mother's arguments that the family court decision is erroneous on the merits. Mother first asserts that the court abused its discretion in finding that there had been a real, substantial and unanticipated change in circumstances. According to mother, the court's findings that she interfered with father's telephone contact with the children, with his ability to attend one of the children's First Communion ceremony, and with his ability to receive information from the children's school, are not supported by the record or are otherwise erroneous. Mother also asserts that these factual findings are insufficient to satisfy the threshold requirement of changed circumstances, particularly in light of the court's failure to acknowledge that father bore a heavy burden of establishing such a change.

¶ 28. The court may modify a parental rights and responsibilities order upon a showing of real, substantial and unanticipated change of circumstances where the modification is in the children's best interests. 15 V.S.A. § 668. The court must make a threshold finding of "a real, substantial and unanticipated change of circumstances" before it can "examine the merits of the parties' claims and reconsider the best interest of the child." *Wells v. Wells*, 150 Vt. 1, 4, 549 A.2d 1039, 1041

(1988). We have recognized that there are no "fixed standards to determine what constitutes a substantial change in circumstances"; instead, the court should be "guided by a rule of very general application that the welfare and best interests of the children are the primary concern in determining whether the order should be changed." *Id.* at 4, 549 A.2d at 1041-42 (block quote format and citation omitted).

¶ 29. The family court has discretion in determining if the moving party has established a change of circumstances. *Id.* at 4, 549 A.2d at 1042; *Meyer v. Meyer*, 173 Vt. 195, 197, 789 A.2d 921, 923 (2001). The moving party bears "a heavy burden to prove changed circumstances, and the court must consider the evidence carefully before making the threshold finding that a real, substantial and unanticipated change of circumstances exists." *Spaulding v. Butler*, 172 Vt. 467, 476, 782 A.2d 1167, 1174 (2001) (internal quotation marks and citation omitted). "[W]illful, repeated interference with visitation rights may constitute a legally significant change of circumstances." *Wells*, 150 Vt. at 4, 549 A.2d at 1042; see also *Bell v. Squires*, 2003 VT 109, ¶ 17, 176 Vt. 557, 845 A.2d 1019 (mem.) (repeated acts of mother and her family to prevent father from forming positive relationship with children was grounds for modification of custody); *Meyer*, 173 Vt. at 200, 789 A.2d at 925 (father's attempt to alienate children from mother was proper factor to show change of circumstances to modify joint custody award); *Renaud v. Renaud*, 168 Vt. 306, 310, 721 A.2d 463, 466 (1998) ("[W]here the evidence discloses a continual and unmitigated course of conduct by a parent designed to poison a child's relationship with the other parent, a change of custody from the offending parent may well be in the child's long-term best interests."); *Kilduff v. Willey*, 150 Vt. 552, 556, 554 A.2d 677, 680 (1988) ("[U]njustifiable denial of visitation may

warrant a finding that there has been a substantial change of circumstances.").

¶ 30. In this case, the family court found that mother's "ongoing, intentional, mean-spirited violations" of court orders concerning parent-child contact constituted a material and substantial change of circumstances. The court found that since the last motion to modify, mother had continued to interfere with father's telephone contact with the children; she had attempted to keep father from attending one of the children's First Communion by refusing to tell him when the ceremony was scheduled; and she had filed a form with the children's school claiming that her boyfriend was the children's stepfather, which meant that father was not permitted to get information about the children. These findings support the court's conclusion that mother has engaged in "willful, repeated interference" with father's visitation rights. See *Wells*, 150 Vt. at 4, 549 A.2d at 1042. We therefore find no abuse of discretion in the court's conclusion that there had been material and substantial change in circumstances since the final divorce order.

¶ 31. In reaching this conclusion, we reject mother's assertion that the family court's findings as to mother's interference with father's telephone contact are not supported by the evidence or are otherwise erroneous. The record provides support for each of the court's findings. Father testified extensively about mother's interference with his ability to contact the children on the telephone. As part of his case, father played a tape recording of a telephone conversation that he had with one of the children. The court did not abuse its discretion in overruling mother's hearsay objection and admitting this tape-recorded statement into evidence. As the attorney for the children pointed out, the tape-recorded statement was not offered for the truth of the child's statement, but instead to show the inappropriateness of the child's behavior, and to demonstrate mother's manipulation of the child. See V.R.E. 801(c) (an out-of-court statement can be considered hearsay if it is offered as proof of the matter asserted therein); *State v. Bernier*, 157 Vt. 265, 269, 597 A.2d 789, 791-92 (1991) (questions on tape recording not hearsay because not offered for proof of the matters asserted in them). Mother did not raise any other objection to the introduction of this evidence at the hearing, and she therefore waived her argument that the court erred in admitting the tape because it was difficult to ascertain what the child was saying.

¶ 32. We also reject mother's assertion that there was no evidence that she directed the children to make derogatory statements to father, or that the children specifically said "pay your child support or stop calling." While mother correctly notes that the children did not make the exact statement quoted above, the evidence in the record amply supports the court's finding that it was "beyond doubt" that mother prompted the children to make derogatory statements to father involving child support issues. Any error in the wording of the court's finding is harmless.

¶ 33. The family court's finding that mother refused to tell father when one of · the children's First Communion ceremony was being held is also supported by credible evidence in the record. Mother argues that this finding cannot support a conclusion of changed circumstances because she has full authority in religious matters involving the children. This argument is without merit. No one disputes that mother had sole authority to make decisions for the children concerning religious issues. Instead, the court found that mother's behavior evidenced her continued interference with father's ability to participate in the children's lives. We therefore reject this argument.

¶ 34. Finally, the record supports the family court's finding that mother filed a form with the children's school that listed her boyfriend as the children's stepfather, which impeded father's ability to obtain information about the children. Father testified to this effect, and he introduced the school form into evidence. Father stated that mother's reference to "court orders on file" next to his name on the form implied that he was not allowed to have any contact with the children. The court overruled mother's objection that the document had been "doctored" based on the testimony of mother's boyfriend, who stated that he recognized mother's signature on the form. The court did not abuse its discretion in admitting this document into evidence. Whether father was actually denied access to the children at school is immaterial to the court's finding that mother's behavior demonstrated her continued attempts to interfere with father's role in the children's lives.

¶ 35. The family court's findings support its conclusion that there has been a real, substantial and unanticipated change of circumstances since the final divorce order was issued. See *Hoover v. Hoover*, 171 Vt. 256, 258 n.2, 764 A.2d 1192, 1193 n.2 (2000) (for purposes of modifying child custody, circumstances are "unanticipated" if they were not expected at the time of the divorce). We therefore affirm its conclusion.

¶ 36. Mother next argues that the court abused its discretion in finding that a change of custody was in the children's best interests. She maintains that because there was no allegation that she was interfering with father's physical contact with the children, and because the court had not yet taken the lesser step of finding her in contempt, a modification of custody was inappropriate. Mother also argues that the court improperly relied on dicta from a 1999 order as justification for its ruling that a transfer of custody was in the children's best interests. Finally, mother asserts that the court failed to address the factors set forth in 15 V.S.A. § 665 and *Wells*, 150 Vt. at 4, 549 A.2d at 1041-42, in reaching its conclusion.

¶ 37. When the family court finds that there has been a real, substantial and unanticipated change of circumstances, it must consider if a change in parental responsibilities is in the children's best interests. 15 V.S.A. § 668. In conducting its analysis, the court must consider the statutory factors set forth in 15 V.S.A. § 665(b). The moving party bears the burden of showing that a transfer of custody is in a child's best interest, and "due to the value of stability in a child's life, it is a heavy one." *Habecker v. Giard*, 2003 VT 18, ¶ 5, 175 Vt. 489, 820 A.2d 215 (mem.). The family court has broad discretion in determining a child's best interests. *Spaulding*, 172 Vt. at 475, 782 A.2d at 1174.

¶ 38. As previously discussed, we recognize that obstruction of visitation and attempts at parental alienation are not in a child's best interests, and they may form the basis for a change in custody. *Bell*, 2003 VT 109, ¶¶ 15-18; *Renaud*, 168 Vt. at 309, 721 A.2d at 465-66 ("[T]he great weight of authority holds that conduct by one parent that tends to alienate the child's affections from the other is so inimical to the child's welfare as to be grounds for a denial of custody to, or a change of custody from, the parent guilty of such conduct."); *Wells*, 150 Vt. at 4, 549 A.2d at 1042. We are mindful, however, that "[w]illful interference with court ordered visitations, no matter how deplorable, cannot be made the basis for an 'automatic' change of custody." *Wells*, 150 Vt. at 4, 549 A.2d at 1042 (internal quotation marks and citation omitted). The primary consideration is a child's best interests, and in making its determination, the court must consider all of the relevant evidence, including whether

the harm caused by one parent's obstruction of visitation outweighs the harm that could be caused by a change in custody. *Id.* at 4-5, 549 A.2d at 1042. In this case, the family court considered the statutory factors, and all of the relevant evidence, in arriving at its decision that a transfer of custody was in the children's best interests. The court's findings are supported by the evidence, and we find no abuse of discretion.

¶ 39. The relevant factors to guide the court's analysis of a child's best interests are set forth in 15 V.S.A. § 665(b), and the court's analysis reflects its consideration of these factors. See *Harris v. Harris*, 149 Vt. 410, 413-14, 546 A.2d 208, 211 (1988) (specific findings tied to each factor unnecessary; it is sufficient if the findings as a whole indicate that the court took all relevant statutory factors into consideration in reaching its decision). The family court found that: mother's anger and vindictiveness created an unhealthy environment for the children; mother's behavior indicated that she placed her own emotional needs before the children's needs, to the children's significant detriment; father, in contrast, demonstrated an ability to put the children's needs first, and he recognized the damage that this situation was inflicting on the children; and father showed an appropriate concern for the children's well-being. The court thus concluded that father was more capable than mother of providing the children with the guidance that they needed, meeting their present and future developmental needs, and fostering a positive relationship with mother. The court also found that the children had a good relationship with father's new wife, and with their step-sister.

¶ 40. While the court did not discuss in detail the quality of the children's adjustment to their present housing, school and community, and the potential effect of any change, or their relationship with mother, it did consider these factors. The court acknowledged that the children had lived with mother since the divorce, and that stability was valuable to them. It found that mother had created a negative and nonsupportive environment for the children, however, which outweighed the value of this stability. As the court explained, "the harm caused by Mother's manipulation and alienation of the children in pursuit of her desire to punish Father outweighs any benefit that exists in their remaining in her home." The evidence supports these findings, and the findings reflect the court's consideration of the effect that a change in custody would have on the children's present situation, as well as its consideration of the children's relationship with mother.

¶ 41. Finally, we reject mother's assertion that the court erred by failing to consider the factors enunciated in *Wells*, 150 Vt. at 4, 549 A.2d at 1042. In *Wells*, we concluded that the family court had abused its discretion by modifying custody without considering whether the harm caused by mother's obstruction of visitation outweighed the harm that could be caused by a change in custody. *Id.* We noted that in analyzing potential harm, the court erred by failing to discuss the possible effect of the removal of the children from mother's household, the extent to which the children had adjusted to their new out-of-state home, or the children's preferences. *Id.* at 5, 549 A.2d at 1042. We stated that the court erred by modifying custody without considering these questions. *Id.*

¶ 42. In this case, as previously discussed, the family court addressed the potential harm that could be caused by a modification of custody. It specifically found that any harm that would be caused by a change in custody was outweighed by the benefit of removing the children from mother's home. Presented with a different factual situation than that found in *Wells*, the family court was not obligated to analyze potential harm

using the same method as the *Wells* court. In light of the family court's consideration of the overarching principle discussed in *Wells*, as well as its consideration of the statutory factors, we find no error.

¶ 43. Further, there is no requirement, as mother argues, that the court must first find mother in contempt before it may find a transfer of custody in the children's best interests. Similarly, there is no requirement that a parent must interfere with physical contact, rather than just telephone contact, before a modification of custody is appropriate. The cases cited by mother do not support such blanket propositions. Finally, we cannot conclude that the family court relied upon dicta from the 1999 decision to reach its own decision. The record shows that the court conducted an independent analysis of the relevant factors in arriving at its decision.

*Affirmed in part and reversed in part.*

Note: Chief Justice Amestoy was present when the case was submitted on the briefs but did not participate in this decision.