VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      25-AP-215



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MAY TERM,   2026

Michelle Kendall v. James Kendall\*          }     APPEALED FROM:
                                             }     Superior Court, Caledonia Unit,
                                             }     Family Division
                                             }     CASE NO. 76-4-14 Cadm
                                             }     Trial Judge: Bonnie J. Badgewick

In the above-entitled cause, the Clerk will enter:

Father, self-represented, appeals from the trial court's May 2025 order concerning his parental rights in the parties' youngest child.  We reverse and remand for additional proceedings.

The parties divorced in October 2018.  They have three children, a son born in April 2006, and daughters born in January 2008 and August 2011.  At the time of their divorce, the parties agreed that mother would have primary physical and legal parental rights and responsibilities (PRR) in the children.  Mother relocated with the children to California; father remained in Vermont.

In August 2021, father filed an emergency motion to modify PRR.  He alleged that mother had moved while the children were visiting him in Vermont, she lacked a stable residence, and she threatened to move with the children to an undisclosed location.  The court directed mother to provide father and the court with her address, and referred the parties to mediation.  The matter was dismissed in April 2022 after the parties failed to engage in mediation.

Father again moved to modify PRR in March 2023, alleging that mother had expelled their eldest daughter from her home for a second time and that the chaotic living environment at mother's home was not in the children's best interests.  Following a hearing, the court denied the motion in an August 2023 order.  The court found that father failed to establish a real, substantial, and unanticipated change in circumstances that warranted modification of the 2018 custody order.  Father asserted that the eldest daughter was at risk of being kicked out of mother's home and did not feel welcome there.  Mother acknowledged that there was friction with the eldest daughter, but she had not asked the eldest daughter to leave the home and the daughter wanted to remain in California.  The court did not consider the existing conflict

between mother and child serious enough to constitute changed circumstances. Even if changed circumstances existed, the court concluded that it would not be in the children's best interests to relocate to Vermont to live with father.

In January 2024, the court held a hearing to address mother's motions related to the parties' eldest daughter. At the hearing, mother indicated that she had experienced a substantial and unanticipated change of circumstances with respect to her ability to care for the children. She had lost her job and was experiencing financial issues, the person running the family's household had left the country, and mother was experiencing negative side effects from medicine she was taking after a 2021 surgery. Mother explained that she was feeling very destabilized and she now agreed with father that he should have custody of the parties' daughters. Father indicated his willingness to care for the girls in California but stated that he needed a transition period to allow him to do so. Father made clear at the hearing that he sought to modify PRR. The trial court described the request as a "stipulated modification" to the existing custody order, and it recognized that father needed a commitment that mother would not change her mind again. Mother responded that she was proposing that father take the children and assume all responsibility for them "as long as the children are safe." Mother asked for an emergency change in custody effective immediately. Father expressed openness to that plan. The court acknowledged that there was not enough time left at the hearing to work out the remaining details. It stated that it could grant the parties' request via "a temporary order contemplating that the two of you will, sort of, figure out the details later on," including parent-child contact (PCC). The parties agreed.

The court subsequently issued a "temporary order on parental rights and responsibilities" in January 2024. It found that mother experienced a substantial change of circumstances and could not care for the children; mother required a period of stability. The court noted that mother suffered from significant headaches stemming from a 2021 surgery; she had to stop taking a particular medication; she lost her job; and was in something of a financial crisis. These events were destabilizing for mother. The court entered a temporary emergency order giving father physical custody of the children and directing that parents would share legal custody. It asked the parties to set aside their differences and submit a more detailed stipulation with the court.

In February 2024, the parties' daughters flew to Vermont from California on short notice at mother's request. With father's assistance, the eldest daughter returned to California shortly thereafter to live with a friend for the remainder of the school year. While staying at the friend's house, the eldest daughter stayed in contact with mother and eventually moved back in with mother. The youngest child stayed with father in Vermont.

Father asserts that mother refused to work with him to "figure out the details," as referenced by the court in its January 2024 order. Without any apparent objection from mother, father simply flipped the prior parent-child contact (PCC) schedule, and the youngest child had PCC with mother in California during the summer.

At the end of the summer in 2024, mother refused to return the youngest child to father in Vermont, and father filed an emergency motion to enforce the order awarding him custody. The court granted father's request in an August 2024 order, directing mother to return the child to father's custody in Vermont. In its order, the court recounted the recent procedural history. It referenced the January 2024 temporary order that awarded father physical custody of the children and contemplated a forthcoming stipulation from the parties. The court explained that

when the parties failed to file a stipulation, a case manager's conference was held and both parents sought custody of their youngest child. The court noted that, while there was no written PCC agreement, father sent the youngest child to California for a large portion of the summer, mirroring the PCC schedule when mother had primary custody. Mother decided to keep the youngest child in California and registered her for school there. Because mother had not filed a motion to modify the temporary order, however, the court directed mother to send the child back to Vermont immediately. The court stated that it would set the matter for a one-day hearing, and that "[w]e will call it father's motion to modify, and mother's motion to vacate the temporary order and reinstate the prior order which gave her primary custody." The parties had not filed any such motions. The court stated that it knew that mother wanted to file the motion referenced above and she needed to do so. In the meantime, the court ordered mother to abide by the January 2024 order that gave father custody.

Mother moved for reconsideration, which the court denied. The child returned to Vermont to stay with father. Mother then moved to vacate the January 2024 order. Father responded that the youngest child should remain in Vermont.

The court held a hearing in late March 2025. At the outset, the court sought to discern what motion was being heard. Although father still had not filed a motion to modify, mother's attorney contended that father had moved to modify, and it was therefore father's burden to establish a substantial and unforeseen change in circumstances. Father disagreed and argued that the hearing should be on mother's motion to vacate. During the hearing the court incorrectly perceived that father's previous motions to modify, filed in 2021 and 2023, were still pending. As noted above, they were not.

In a May 2025 order, the court denied father's "motion to modify" and granted mother's motion to vacate the January 2024 order. The court recounted the procedural history above. It incorporated findings from the August 2023 order that denied father's previous motion to modify, apparently for historical context. Although father had not filed a motion to modify, the court found that he had the initial burden of showing a "real, substantial and unanticipated change of circumstances," 15 V.S.A. § 668, to modify the custody award in the 2018 final divorce order. The court determined that father failed to satisfy this burden.

The court recounted the circumstances above concerning mother's inability to care for the children as of January 2024. It found that mother had obtained a new job and no longer took the medication that caused unwanted side effects. It further found that the youngest child had done well in school in Vermont, and father ensured that she saw a dentist and doctor. Father acknowledged that the child wanted to return to California for the 2025-2026 school year.

According to the court, father argued that mother's repeated acknowledgement that she could not manage or parent the child constituted changed circumstances, as did her poor parenting over multiple years. Father expressed concern that mother would ask their youngest child to leave the home as she had with the eldest daughter. He also asserted that having the youngest child in his care for the prior eighteen months constituted a real, substantial, and unanticipated change and that changing custody would create upheaval and instability for the child.

The court found that the evidence did not support this final contention. It found that the testimony showed that the youngest child was a resilient and energetic child who could thrive in

3

the face of change. The child was familiar with California and her mother's home, moreover, having lived there from 2016 to 2024.

The court found no change that would warrant modifying the 2018 order. It believed the temporary order appropriately served as a temporary change for the youngest child while consistency was restored in California. The court reasoned that while children needed consistency and stability, this need, on the facts presented, did not constitute a real, substantial, and unanticipated change in circumstances. It found no evidence that the emergency change in custody resulted in instability. The child had thrived in both locations and was able to get back into a routine with mother during the summer without incident. The court also rejected father's argument about mother's poor parenting. It found that mother struggled with a variety of issues, sought help from others, and took reasonable steps to address these issues.

Although the court found father failed to satisfy the threshold requirement of changed circumstances, it considered whether the child's best interests would be served by modifying the 2018 order "in the interest of completeness." The court concluded that it would not be in the youngest child's best interests to modify the 2018 order. Following the court's May 2025 decision, the child returned to California to live with mother. This appeal by father followed.

Our standard of review is well-established:

> The court may modify a parental rights and responsibilities order upon a showing of real, substantial and unanticipated change of circumstances where the modification is in the children's best interests. The court must make a threshold finding of a real, substantial and unanticipated change of circumstances before it can examine the merits of the parties' claims and reconsider the best interest of the child. We have recognized that there are no fixed standards to determine what constitutes a substantial change in circumstances; instead, the court should be guided by a rule of very general application that the welfare and best interests of the children are the primary concern in determining whether the order should be changed.
>
> The family court has discretion in determining if the moving party has established a change of circumstances. The moving party bears a heavy burden to prove changed circumstances, and the court must consider the evidence carefully before making the threshold finding that a real, substantial and unanticipated change of circumstances exists.

Sundstrom v. Sundstrom, 2004 VT 106, ¶¶ 28-29, 177 Vt. 577 (mem.) (quotation omitted) (citations omitted). We will affirm the court's decision unless its "discretion [was] erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence." deBeaumont v. Goodrich, 162 Vt. 91, 98 (1994) (quotation omitted).

Father argues that the court erred by finding that he had the burden of showing changed circumstances. He explains that he did not file a motion to modify. Instead, the court stated that it would consider father as having filed such a motion in an entry order. No such motion was

4

ever filed. Father maintains that the parties intended and agreed in January 2024 that the existing order would be modified to award father physical custody of the children and that the "temporary" nature of the order did not undermine the custodial portion of their agreement. He argues that the court's January 2024 decision effectively became a final order. Father also asserts that there were plainly changed circumstances in this case. Mother admitted to changed circumstances at the January 2024 hearing and the court there expressly found that changed circumstances existed. Father cites the child's relocation to Vermont for over a year as further evidence of changed circumstances. Father asks for a new hearing to replace the fundamentally flawed hearing held in March 2025.

We agree with father that the March 2025 hearing was flawed and that he is entitled to a new hearing with mother bearing the burden of proof. As father states, he did not file a motion to modify and the court erred in acting as if he had done so. We further agree with father that the January 2024 order transferring physical custody to him at mother's request was constructively a final order. Mother, who was the custodial parent at the time, unequivocally requested that father take immediate custody of the children as she could not care for them. She did not state that this was a time-limited arrangement. To the contrary, she proposed that father take the children and assume all responsibility for them "as long as the children are safe." She expressed that she now agreed that father's prior motion to modify should have been granted. Father expressed his need for a binding change, a concern that the court recognized. Mother's need at the hearing was urgent, however, leaving the parties unable to "fill in the details" within the allotted hearing time. The parties thereafter did not file a stipulation with the court, nor did the court schedule any follow-up hearings. The parties nonetheless proceeded as if the court's order was final and "filled in the blanks" through their actions with no objection being raised by either party, until father's 2024 motion to enforce. Under these unique circumstances, including the custodial parent's specific request for a change in custody without any temporal limitation, we agree with father that the order transferring physical custody to him was effectively a final order. This promotes the critical goal of providing stability for the child. Kilduff v. Willey, 150 Vt. 552, 553 (1988).

Putting aside the error in ruling on a motion that father never filed, the court should have placed the burden on mother to show a real, substantial, and unanticipated change in circumstances that warranted modification of the January 2024 order. As discussed above, mother effectively sought and agreed to a modification of the 2018 order based on her admitted changed circumstances, and the court effectively granted her request. To the extent that the crisis situation has now passed, she may argue that there has been a real, significant, and unanticipated change in circumstances since the 2024 order. Mother's burden will be a "heavy" one given the need "to ensure stability in the lives of . . . children." deBeaumont, 162 Vt. at 97, 99 (quotation omitted) (stating that "residency decision of the custodial parent is entitled to deference and giving stability to a child's life, to the extent possible under the circumstances, is so important that custody ought not to be modified without critical justification") (quotation omitted). Assuming mother meets that burden, the question becomes whether modification of the January 2024 order giving father physical custody is in the child's best interests. The court's analysis here, including its analysis of the best-interest factors, does not reflect this understanding.

This case is reversed and remanded for additional proceedings consistent with this opinion. On remand it will be mother's burden under 15 V.S.A. § 668 to modify the January 2024 order. To that end, she may file a new motion to modify that order, or supplement her

previously filed motion to vacate, with updated information regarding current circumstances and the child's best interests, to which father can respond. As the parties' youngest child is presumably finishing her current school year in California, we anticipate that, unless the family division orders otherwise, she will complete the 2025-2026 school year there.

Reversed and remanded for additional proceedings.

BY THE COURT:

Harold E. Eaton, Jr., Associate Justice

Christina E. Nolan, Associate Justice

Michael P. Drescher, Associate Justice

6