**John D. POWELL**

v.

**Nancy N. POWELL.**

Supreme Judicial Court of Maine.

Argued June 23, 1994.
Decided Aug. 3, 1994.

Donald W. Perkins (orally), Portland, for plaintiff.

Susan Kominsky (orally), Vafiades, Brountas & Kominsky, Bangor, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

John D. Powell appeals from a judgment of divorce entered in the Superior Court (Penobscot County, *Browne, A.R.J.*). Contrary to John's [1] contentions, we find sufficient evi-

1. The use of the parties' first names in this opin- ion does not imply a casual or disrespectful atti-

dence in the record to support the court's implied findings. We affirm the judgment.

The record discloses the following facts. John Powell filed for a divorce from his wife Nancy in 1991, after nine years of marriage. During the first years of their marriage, both John and Nancy worked for airlines—John as a commercial pilot, and Nancy as a supervisor of flight attendants, and then as a salesperson for freight-space reservations. Later the couple decided Nancy should stay at home full time with their two young children. At that time John's schedule kept him away from the family and their home in Holden for as many as twenty days a month.

In addition to his work as a pilot, John pursued a separate career in real estate sales and management. His company, Landmark, Inc., enjoyed some early success, but during the latter years of the marriage the business suffered losses as the real estate market declined.

Just before John and Nancy married, John transferred the house he owned in Holden to himself as trustee of a trust wherein his parents were the beneficiaries. Nancy did not know about this transfer until four years after they were married. During the marriage, John and Nancy invested considerable time and money in the Holden house, with particular attention to the lower floor master bedroom area, where a large "soaking tub," waterfall, stone walls, and ceilings were installed.

In 1987 John and Nancy bought another home in Charlotte, North Carolina, ostensibly to serve as a closer base for John to his airline's hub in Washington, D.C. The family never lived in the home. At the time of the hearing, the house had lost money as a rental property, and although it had once been on the market, John did not believe it should remain for sale without needed roof repairs.

When the marriage broke down, Nancy and the two children moved to Florida where Nancy could be closer to her family. She took a part-time, low-paying job in a business owned by a family member in order to have flexible hours to spend time with her children. John remained in Maine, and continued to work for the airline. At the time of the divorce hearing John was physically unable to perform his job as a pilot because of a neck injury. He was collecting approximately $70,000—half of his regular salary—in disability pay.

The court heard testimony and received many documents in evidence over the course of the two-day hearing, with most exhibits focusing on the contested values of the couple's assets and their nature as marital or nonmarital property. The court entered a judgment of divorce in June 1993.

### The Effect of the Failure To Request Additional Findings

 John argues that the court failed to find sufficient facts to support its legal conclusions.[2] We have held that the divorce court has a duty to make findings sufficient to inform the parties of the reasoning underlying its conclusions and to provide for effective appellate review. *Bayley v. Bayley*, 602 A.2d 1152, 1153–54 (Me.1992). The omission of factual findings is not fatal to a divorce judgment, however, and does not, alone, constitute an abuse of discretion. *Id.* at 1154. Moreover, it is the duty of a party to make a request for additional findings of fact and conclusions of law when the judgment seems to be deficient in such findings. M.R.Civ.P. 52. John did not request additional findings.

 John argues that the court has an obligation, in the first instance, to set forth the basis of its decision with sufficient detail that a request for additional findings of fact and conclusions of law is unnecessary. We disagree. The case law is clear. In the absence of a motion for specific findings of

---

tude toward the parties. That use is a convention we have adopted in cases where parties have the same surnames in order to avoid confusion when referring to the parties and their respective arguments and interests.

2. John also raised on appeal the issue whether the court erred in signing a revised qualified order dealing chiefly with the parties' pension assets, while the case was pending in this Court. Apparently the parties are now in agreement that the revised QDRO can be signed by the divorce court upon remand.

fact and conclusions of law, we assume the divorce court found all the facts necessary to support the judgment. *Bayley v. Bayley,* 602 A.2d at 1154 (citing *Murray v. Murray,* 529 A.2d 1366, 1368 n. 1 (Me.1987)).[3]

Because John failed to request additional findings, we assume that the court made the findings necessary to support the particulars of the judgment. We review the court's implicit findings only for clear error. *Szirbik v. Szirbik,* 549 A.2d 1136, 1137–38 (Me.1988).

### The Alimony Award

■ John argues that the court failed to consider the statutory criteria for awarding alimony, pursuant to 19 M.R.S.A. § 721 (Supp.1993).[4] Although the divorce judgment does not include specific findings as to each of the factors in section 721,[5] John's failure to request specific findings dictates that we assume that the divorce court made the necessary findings to support an alimony award of $1,000 a month to Nancy. Furthermore, the record supports the court's implied findings on the section 721 factors, most notably in the evidence relating to John's ability to pay Nancy the amount ordered despite his claimed "cash flow deficit," and the evidence relating to the education, income, and employment history of both John and Nancy.

The evidence also requires us to reject John's contention that the court's award of alimony constitutes a plain and unmistakable injustice. We have repeatedly stated that in reviewing alimony awards we defer to the

trial court's judgment unless the record reflects "a clear violation of some positive rule of law or the claimed injustice is so plain and unmistakable that it is 'instantly visible without argument.'" *Matheson v. Matheson,* 633 A.2d 400, 401 (Me.1993) (quoting *Gray v. Gray,* 609 A.2d 694, 698–99 (Me.1992)). The record does not reveal an error of law. There is no "plain and unmistakable" injustice in the alimony award that is "instantly visible without argument."

### The Child Support Award

■ John argues that the court erred in calculating child support for three reasons: (1) the court failed to accept John's contention that Nancy had an earning capacity of $35,000; (2) the court did not subtract John's union dues when it determined his salary; and (3) the court refused to deviate from the child support guidelines in light of John's cost of travel to see his children. Each of these arguments is without merit.

The court ordered John to pay $257 per week child support for the care of the two children. This figure was calculated by assigning John an income of $78,000 and Nancy an income of $15,000. The court did not accept John's expert's opinion that Nancy could make approximately $35,000 a year in a sales position. It is within the fact finder's discretion to accept or reject the opinions of expert witnesses. *Cf. Allen v. Hunter,* 505 A.2d 486, 487 (Me.1986) (it is within province of the trial court in jury-waived trial to evalu-

---

**3.** If John had filed a motion requesting such findings, and the court had refused to grant such a request, we could not assume the divorce court made the necessary findings to support its judgment. *Bayley v. Bayley,* 602 A.2d at 1154. The judgment in this case lacks adequate express findings. Therefore, it would have been incumbent on the divorce court to grant the request for additional findings and set forth the factual support for its conclusions. "[W]here a party has moved for specific findings of fact the divorce court is obliged to do more than recite the relevant criteria and state a conclusion." *Id.* To refuse to grant the motion would, in fact, have constituted an abuse of discretion. *Id.*

**4.** The statutory criteria are as follows: The length of the marriage; the ability of each party to pay; the age of each party; the employment history and employment potential of each party; the income history and income potential of each

party; the education and training of each party; the provisions for retirement and health insurance benefits of each party; the tax consequences of the division of marital property, including the tax consequences of a sale of the marital home, if applicable; the health and disabilities of each party; the tax consequences of an alimony award; the contributions of either party as homemaker; the contributions of either party to the education or earning potential of the other party; economic misconduct by either party resulting in the diminution of marital property or income; the standard of living of the parties during the marriage; and any other factors the court considers appropriate. 19 M.R.S.A. § 721 (Supp.1993).

**5.** We do not imply by this comment that the divorce court must make specific findings on each of the factors in § 721.

ate witness's credibility); *Perkins v. Conary,* 295 A.2d 644, 647 (Me.1972) (weight to be given to credibility of surveyor's opinion is for the trial court to determine). Nancy testified that she did not want to work full time until her children were older. She also testified that she did not want to work in sales, nor did she feel qualified for sales jobs. Still, the court assigned her an income that is more than she is currently making at her $6.00 an hour position. The court properly did not base her child support obligation only on her current earnings, but also considered her earning potential. *See Rich v. Narofsky,* 624 A.2d 937, 939 (Me.1993). It was not erroneous for the court to place Nancy's income at $15,000, rather than $35,000.

John next argues that the court erred when it did not subtract from his gross income, as defined in the child support guidelines, his union dues and fees as "ordinary and necessary expenses when a party is self-employed or derives income from proprietorship of a business, joint ownership of a partnership or a closely held business operation." 19 M.R.S.A. § 311(5)(C) (Supp.1993). It was not erroneous for the court to reject John's argument that as a pilot who must pay union dues in order to work he qualifies for the exclusion of such expenses from his salary for purposes of determining his child support obligation. Because John is not self-employed, and does not derive his pilot's income from his own business, he does not fall within this statutory language.

Finally, contrary to John's argument, the court was not obligated to provide a deviation from the child support guidelines for his travel expenses. The court is authorized to deviate from the basic child support guidelines when "[a]n obligor party's substantial financial obligation regarding the costs of transportation of the child or children for purposes of parent and child contact ... exceed 15% of the yearly support obligation." 19 M.R.S.A. § 317(3)(P) (Supp.1993). It was not erroneous for the court to conclude that John's travel expenses will not be substantial, especially in light of his employment benefit of flying at no charge.

### The Disposition of Property

John argues that the court did not comply with the following procedure in characterizing and distributing the marital and nonmarital property:

(1) determine what of the parties' properties is marital and what is nonmarital, including the contributions each may have made to the acquisition of the marital property, and recognizing the contribution of a spouse as a homemaker;

(2) set apart to each that spouse's nonmarital property; and

(3) divide the marital property between them in such proportion as the court deems just.

*Grishman v. Grishman,* 407 A.2d 9, 11 (Me. 1979). *See* 19 M.R.S.A. § 722–A (1981 & Supp.1993). Although we agree with John that the divorce judgment lacked specific findings with regard to the value of marital and nonmarital property,[6] we must assume that the court made the necessary subsidiary findings to support its more general conclusions in light of the absence of a request for additional findings on this issue. Moreover, a careful review of the record demonstrates sufficient support for the court's implied findings with regard to the division of the real estate.[7] We therefore reject John's argument that the court's division of the parties' assets was improper and inequitable.

---

**6.** The marital property was divided, in main part, as follows: John was awarded the Holden house, Nancy received the Charlotte House; John was awarded his real estate company, Nancy was awarded a half-interest in one of John's limited partnerships related to his real estate ventures; both Nancy and John were awarded their own investment accounts, and Nancy was awarded half of one of John's investment accounts; Nancy was awarded a 1990 van, John retained his 1979 truck; each party was awarded various personal items and home furnishings.

**7.** For example, the court's finding that the substantial renovations done to the Holden residence resulted in an increase to the marital equity is fully supported by the documentary and testimonial evidence. John's contention that the work constituted "repairs" and did not result in a substantial increase to the marital value is not borne out by the record.

John's remaining contentions are without merit.

The entry is:

Judgment affirmed. Remanded to the Superior Court for the consideration of an award of attorney fees to defendant in light of the appeal and entry of the revised QDRO.

All concurring.