2004 ME 94

**In re ZOE M.**

Supreme Judicial Court of Maine.

Submitted On Briefs: June 24, 2004.

Decided: July 23, 2004.

Randy G. Day, Esq., Garland, Michelle A. Dolley, Esq., Winslow, for appellants.

G. Steven Rowe, Attorney General, Matthew Pollack, Asst. Attorney General, Pat Stevens, Asst. Attorney General, Augusta, for appellees.

Charles Veilleux, Esq, Skowhegan, for Guardian ad Litem.

Rebecca Crayford, Esq., Skowhegan, Christine M., Hartland, for Other interested parties.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶1] The mother and grandmother of Zoe M. appeal from the judgment of the District Court (Skowhegan, *MacMichael, J.*) terminating the parental rights of the mother to Zoe pursuant to 22 M.R.S.A. § 4055 (2004) and denying placement of Zoe with the grandmother. The mother asserts a violation of her due process rights resulting from the denial of reunification services to her after the entry of a preliminary protection order following a summary hearing. The grandmother challenges the adequacy of the court's findings regarding Zoe's best interest and the sufficiency of the evidence to support the denial of her request for custody of Zoe. We affirm the judgment.

## I. BACKGROUND

[¶2] Zoe was born on January 23, 2003. During the first five months of living with her biological parents, Zoe was subjected to three serious, inflicted injuries resulting in a broken femur, perforated colon, and a torn frenulum (tongue) for which the parents failed to seek timely medical care. After filing a petition and affidavit for a preliminary protection order, the Department of Human Services took custody of Zoe in June 2003, pursuant to an order of the District Court. A summary hearing on the preliminary protection order was held in July 2003, resulting in the Department keeping custody of Zoe. A jeopardy order was entered by agreement in October 2003. The court found that "the parents subjected the child to heinous and abhorrent circumstances" and, therefore,

relieved the Department of reunification efforts.

[¶3] Zoe's maternal grandmother requested intervenor status, which was granted in August 2003, but restricted to issues of placement. The Department agreed to begin a home study of the grandmother, and she requested placement of Zoe by a petition filed in October 2003. A judicial review order dated October 17, 2003, stated that the Department's permanent plan was adoption and the parents' permanent plan was placement with a fit and willing relative. Pursuant to the jeopardy order, the grandmother continued to visit Zoe regularly. A separate order required that the grandmother undergo evaluations for substance abuse, domestic violence, and ability to protect the child.

[¶4] A hearing on the Department's petition for termination of parental rights and placement was held on December 17 and 18, 2003.[1] Evidence admitted at trial provided support for conclusions that the grandmother would be capable of caring for the child, but also supported the conclusion that maintaining the placement of Zoe with the foster parents would be in Zoe's best interest. The guardian ad litem testified that he had no concerns about the grandmother's ability to protect Zoe if Zoe were placed in her home. On the other hand, a psychological evaluation of the grandmother, performed by Dr. David Booth, concluded that it would be in Zoe's best interest to use the current foster home as Zoe's permanent placement because Zoe had bonded with the foster parents and established a feeling of security, and removing Zoe from the foster home would create a risk of "serious emotional distress." Dr. Bruce Saunders, who performed a psychological evaluation of Zoe,

---

1. The father consented to the termination of his parental rights by order on January 2, 2004, and does not appeal the court's judgment.

the mother, and the father, testified that Zoe was particularly at risk if she were removed from her foster mother because of Zoe's history of having been repeatedly traumatized. He described the possible removal of Zoe from the foster parents as "taking a child away from [her] parent." Dr. Saunders also testified that removing Zoe from her foster placement was inappropriate and could precipitate additional regression, destabilization, and emotional trauma.

[¶ 5] After the hearing for termination of parental rights and placement, the court issued a judgment terminating the mother's parental rights. The court denied the grandmother's request for custody of Zoe, finding that:

[R]emov[ing] this multiply traumatized child to any additional circumstance or placement would be inappropriate and would probably precipitate destabilization, regression, attachment difficulties, and additional emotional trauma. She resides in a potentially adoptive foster home. Her placement is appropriate.

This appeal followed.

## II. DISCUSSION

### A. The Mother

[¶ 6] The mother primarily argues that the Department's failure to initiate efforts to reunify her with Zoe following the preliminary summary hearing violated her right to due process of law pursuant to the Fourteenth Amendment of the United States Constitution. The mother's claim of a due process violation associated with the denial of reunification services prior to the entry of the court's jeopardy order in October 2003 is unpreserved because no appeal was taken from

that judgment. Alexander, *Maine Appellate Practice* § 402(a) at 163 (2003). Even if the issue had been properly preserved, the mother could have, but failed to seek judicial review of the Department's refusal to provide reunification services following the preliminary summary hearing. *See* 22 M.R.S.A. § 4041(1–A)(A)(4) (2004) (stating, "any party may seek an informal conference with all other parties in an effort to resolve the disagreement, prior to initiating court action. If the parties are unable to agree after an informal conference, the parties may have access to the court's case management system."). There was, therefore, no due process violation.

[¶ 7] The mother also contends that the court's finding of the existence of "heinous and abhorrent circumstances" in its jeopardy order by a preponderance of the evidence had the effect of diminishing the requirement of proof by clear and convincing evidence once the statutory rebuttable presumption related to "heinous and abhorrent" conduct, *id.* § 4055(1–A)(A), was applied at the termination stage. Contrary to this contention, the court's earlier finding did not relieve the Department of its burden at the termination stage of proving the facts giving rise to the rebuttable presumption by the heightened standard of clear and convincing evidence.[2] We find the remaining arguments advanced by the mother to be without merit and decline to address them.

### B. The Grandmother

[¶ 8] In determining whether to grant a grandparent's request for placement of a child with the grandparent, "the

---

2. The court issued detailed findings regarding parental unfitness based on clear and convincing evidence introduced at the termination hearing and findings from the jeopardy order. This satisfies the District Court's requirement to take additional evidence when considering findings from previous orders in order to satisfy the higher burden of proof. *In re Charles G.*, 2001 ME 3, ¶¶ 3–4, 763 A.2d 1163, 1165.

court shall give the grandparents priority for consideration for placement if that placement is in the best interests of the child and consistent with section 4003." [3] 22 M.R.S.A. § 4005–E(2) (2004). When an appellant challenges a court's order denying placement to a grandparent in a child protective setting, the appellant must show that the evidence compels a finding that placement with the grandparent is in the child's best interest. *In re Annie A.*, 2001 ME 105, ¶ 30, 774 A.2d 378, 386.

[¶ 9] The grandmother contends that the court erred because the evidence compels a finding that placement of Zoe with her was in Zoe's best interest, citing, among other things, the guardian ad litem's conclusion that she was capable of caring for Zoe and that the placement would be in Zoe's best interest. The grandmother also contends that the court erred by failing to issue findings of fact and conclusions of law that explicitly state that placing Zoe in her custody is not in Zoe's best interest.

[¶ 10] Turning first to the sufficiency of the court's findings, the court specifically found that Zoe's existing placement was appropriate and that any change in custody "would probably precipitate destabilization, regression, attachment difficulties, and additional emotional trauma." It is implicit in this finding that a change in Zoe's custody to the grandmother would not be in the child's best interest. In the absence of a request by the grandmother for additional findings pursuant to M.R. Civ. P. 52(b), we assume that the District Court made all of the findings necessary to support its decision. *Associated Builders, Inc. v. Oczkowski*, 2002 ME 115, ¶ 11, 801 A.2d 1008, 1011. Under the circumstances presented, we see no reason to interpret section 4005–E(2) as requiring that the court's findings be deemed deficient if the court fails to use the phrase "best interest of the child."

[¶ 11] Turning next to the question of the sufficiency of the evidence on the issue of grandparent placement, competent evidence supports the court's implicit finding that placement with the potentially adoptive foster parents, rather than with the grandmother, is in Zoe's best interest. Evidence from two evaluating psychologists provided strong support for the conclusion that removing Zoe from her current foster parents would create serious emotional harm.

[¶ 12] A grandparent is entitled to priority consideration for placement only "if that placement is in the best interests of the child and consistent with section 4003." 22 M.R.S.A. § 4005–E(2). Therefore, if a court concludes that a child's best interest can be achieved by placement with a grandparent and also through some other custodial arrangement, the statute directs that, as between the two alternatives, placement with the grandparent be given priority. The statute does not, however, require placement with a grandparent absent a best interest finding in favor of the grandparent. Here, because the court implicitly found that placement with the grandmother would not be in Zoe's best interest, and that finding is supported by competent evidence, the court did not err by denying the grandmother's request.

The entry is:

Judgment affirmed.

**3.** Section 4003 sets forth the legislative intent and purposes for the Child and Family Service and Child Protection Act. *See generally* 22 M.R.S.A § 4003 (2004).