2005 VT 26

## Lesli MAURER v. Niel MAURER

[872 A.2d 326]

No. 03-572

¶ 1. February 22, 2005. Father appeals from the family court's order modifying parental rights and responsibilities, and awarding sole legal and physical parental rights and responsibilities over the parties' minor child to mother. Mother is proceeding pro se.* Father argues that the family court erred because: (1) the evidence does not support a finding that there has been a material change in circumstances; (2) the court's findings are insufficient to show that a transfer of custody to mother is in the child's best interests; and (3) the mediation provision in the parties' final divorce decree must be enforced. We affirm the trial court's conclusion regarding changed circumstances, but we reverse the court's conclusion that a transfer of sole custody to mother was in the child's best interests.

¶ 2. Mother and father are the parents of Benjamin Mauer, born in May 1992. Parents separated in 1999, and were divorced in May 2002. At the time of their divorce, they agreed to share legal and physical rights and responsibilities over Ben. They also agreed to attempt to resolve any future disputes through mediation before returning to court. On September 26, 2003, mother, then with

* We reject father's request that we disregard mother's brief because it fails to comply with V.R.A.P. 28(a)(4). See *Beyel v. Degan*, 142 Vt. 617, 619, 458 A.2d 1137, 1138 (1983) (we will consider issues raised by pro se litigant even though litigant failed to properly or clearly brief issue on appeal).

counsel, filed a motion to modify parental rights and responsibilities. Mother asserted that father had refused to allow Ben to engage in counseling, which she believed was in Ben's best interest. She also averred that father had discussed the issue of counseling with Ben, thereby putting him in the middle of the decisionmaking process. Mother acknowledged that the parties had agreed to mediate disputes, but stated that father had refused to participate in mediation.

¶ 3. The family court held a hearing on mother's motion on October 21, 2003; father appeared pro se, and mother was represented by counsel. Mother testified that, since October, the parties were no longer evenly sharing physical custody of Ben; instead, Ben was spending most of his time with her and every other weekend with father. Mother explained that in December 2002 father had remarried and moved to a new residence approximately twenty miles away, and recently it had become difficult for father to pick Ben up at mother's home. Mother also stated that Ben was spending less time at father's home because Ben did not feel that he had his own personal space there. Mother testified that, beginning in December 2002, Ben began to have difficulty sleeping and with his schoolwork, and he was suffering from low self-esteem. Mother introduced a recommendation from Ben's pediatrician, dated September 18, 2003, referring Ben for individual counseling. Mother testified that she had informed father of the doctor's recommendation, and father had responded that they should wait six months to see if the situation improved. Mother testified that father had discussed counseling with Ben against her wishes. Mother also stated that she and father disagreed about Ben's involvement in after-school activities. She indicated that her communication with father in this area had been "pretty acrimonious." She also asserted that father had acted unilaterally in making decisions regarding Ben's activities.

¶ 4. Father testified on his own behalf. He stated that he and mother had clear and steady communication about Ben. Father indicated that he was reluctant to engage a mediator over Ben's after-school schedule, instead finding it more appropriate to first attempt to work out the problem themselves. Father stated that mother had first informed him about Ben's self-esteem issues, and her desire that Ben engage in counseling, in late September 2003. Father was concerned that the recommending physician had not seen Ben directly, and felt that a better approach might be to first increase Ben's participation in outside activities to see if this helped boost his self-esteem. Father testified that he called Ben's pediatrician as well as the school guidance counselor to garner more information about Ben's condition. He stated that, while he preferred a different initial approach, he remained open to the use of therapy.

¶ 5. The court rendered its decision on the record at the close of the hearing. The court stated that, although the parties' final divorce order provided that they would have joint legal and physical responsibilities, the parties had modified that agreement through their behavior. The court found that the parties had substantially different parenting styles and methods, and they had demonstrated an inability to share parental rights. The court explained that the parties were unable to agree on transportation and counseling, and both parties were setting up activities for Ben without consulting one another. The court thus concluded that parents' inability to share joint legal and physical responsibilities constituted a substantial and unanticipated change of circumstances. The court found that Ben was suffering as a result of being caught between two different parenting styles, and although it found value in both parenting styles, "somebody's got to make

the decision, and you've got to consider the best interest of the child." The court stated that children benefitted from being exposed to different activities, including sports, and while mother could consult with father in this regard, "[n]ow mother can make the decisions." A final judgment order was issued transferring sole legal physical rights and responsibilities to mother, and father appealed.

¶ 6. Father first argues that the evidence presented at the hearing was insufficient to support a finding of changed circumstances. Relying on *Gates v. Gates*, 168 Vt. 64, 716 A.2d 794 (1998), father maintains that the communication problems that arose between mother and father were insufficient to satisfy this threshold requirement. He asserts that this is particularly true where, as here, the parties did not mediate the issues between them before proceeding to court.

¶ 7. The court may modify a parental rights and responsibilities order upon a showing of a real, substantial and unanticipated change of circumstances where the modification is in the children's best interests. 15 V.S.A. § 668. There are no "fixed standards to determine what constitutes a substantial change in material circumstances"; instead, the court should be "guided by a rule of very general application that the welfare and best interests of the children are the primary concern in determining whether the order should be changed." *Wells v. Wells*, 150 Vt. 1, 4, 549 A.2d 1039, 1041-42 (1988) (citation omitted). The trial court has discretion in making this determination, and we will not disturb the court's determination unless it exercised its discretion on grounds or for reasons clearly untenable, or if it exercised its discretion to a clearly unreasonable extent. *Meyer v. Meyer*, 173 Vt. 195, 197, 789 A.2d 921, 923 (2001).

¶ 8. Father relies on *Gates* to support his assertion that a breakdown in communication is insufficient to establish changed circumstances. In *Gates*, however, our conclusion rested on a finding that communication between parents had been consistently poor since their divorce. 168 Vt. at 68, 716 A.2d at 797. Thus, their ongoing communication difficulties did not constitute an unanticipated and substantial change in circumstances. We recognized that, under different circumstances, a breakdown in communication between parents could suffice as a substantial and unanticipated change. *Id.* In this case, the record reflects that the parties' inability to share parental rights and responsibilities was a new development. As the court found, parents were unable to agree on transportation or counseling. They were setting up activities for Ben without consulting one another, and they had different parenting styles. Ben was suffering as a result. Additionally, as of October 2003, Ben was spending substantially more time at mother's home than at father's home. The court's findings in this case are supported by the evidence, and they support its conclusion that a substantial and material change of circumstances had occurred since the parties' divorce. See *Meyer*, 173 Vt. at 197-98, 789 A.2d at 923 (upholding finding of changed circumstances where parties disagreed on major issues involving the children, there had been a significant change in parties' dealings with one another since the divorce, and children were suffering the effects of parties' disagreements).

¶ 9. Moreover, we reject father's assertion that because the parties did not engage in mediation, the family court erred in finding changed circumstances. Father offers no legal support for this assertion, and as discussed above, the court's findings indicate that a substantial change in circumstances had occurred since the parties' divorce. In any event, mother presented evidence that father refused to engage in mediation.

Father cannot take advantage of his own refusal to prevent the court from acting. To hold otherwise would permit one parent unilaterally to divest the family court of jurisdiction. For this reason, we also reject father's argument that this case must be remanded to allow the parties to mediate their disputes.

¶ 10. When the family court finds that there has been a real, substantial and unanticipated change of circumstances, it must consider if a change in parental responsibilities is in a child's best interests. 15 V.S.A. § 668. In conducting its analysis, the court must consider the statutory factors set forth in 15 V.S.A. § 665(b). We recognize the trial court's broad discretion in determining a child's best interests. *Spaulding v. Butler*, 172 Vt. 467, 475, 782 A.2d 1167, 1174 (2001). We will uphold the family court's factual findings if they are supported by credible evidence, and we will uphold the court's conclusions if the factual findings support them. *Id.* "We will, however, reverse if the court's findings are not supported by the evidence, or if its conclusions are not supported by the findings." *Id.* (internal citations omitted).

¶ 11. Father argues that the court's findings are insufficient to establish that a transfer of custody to mother was in Ben's best interests. Father asserts that the family court did not consider the best interests standard, or at least not in a way that would allow for appellate review. According to father, the court's findings indicate that it could have just as easily ruled that a transfer to him of sole legal and physical rights was in Ben's best interests.

¶ 12. We agree. Although father did not request findings under V.R.C.P. 52(a), the family court made findings on the record on its own initiative. This is permissible under V.R.C.P. 52(a), but "findings made under these circumstances must still meet the test of adequacy." *Mayer v. Mayer*, 144 Vt. 214,

215, 475 A.2d 238, 239 (1984). As we explained in *Mayer*, "[a] major purpose of findings is to enable this Court, on appeal, to determine how the trial court's decision was reached. Therefore, the facts essential to the disposition of the case must be stated." *Id.* at 216-17, 475 A.2d at 240 (internal citations omitted). We do not require, as the dissent states, that findings be made in all custody cases. Instead, we simply require that when the court makes findings on its own initiative, as in this case, the findings must meet the test of adequacy upon review. *Id.* at 215, 475 A.2d at 239. The court's findings are inadequate here.

¶ 13. In support of its conclusion, the family court stated:

> We are not going to dictate parenting styles. And we're not going to select the style that is better for the child or not. This is one of the problems when people get divorced. The children suffer. This child is suffering because of the different parenting styles, and he's caught in the middle. And you have to learn how to avoid that. In many respects we would encourage the parenting style of the father to be observed. In other respects perhaps the mother's parenting style has some attributes to it. However, somebody's got to make the decision, and you've got to consider the best interests of the child. Children need to be exposed to different activities and the different experiences. Sports are important for young boys. You should consult, but you can't do it unilaterally. Now the mother can make the decisions.

These findings do not support a conclusion that a transfer of sole custody to

mother was in Ben's best interests. Other than its statement that Ben's best interests would be served by vesting sole decisionmaking authority in one parent, the court fails to explain why that parent should be mother. We reject the dissent's assertion that the family court's remarks should be considered as a hortatory utterance rather than as findings of fact. The family court prefaced its remarks with a statement that it "finds on the evidence." While the use of the words "we find" in discussions prior to the formal announcement of a notice of decision does not necessarily transform remarks from the bench into intentional findings within the meaning of V.R.C.P. 52(a), *Helm v. Helm*, 148 Vt. 336, 339, 534 A.2d 196, 198 (1987), the family court in this case also stated in its written order that its decision was "predicated upon the evidence presented and the findings of the court." Even assuming that the family court's remarks were hortatory, however, they indicate the court's thinking, and they reflect its failure to properly consider Ben's best interests in reaching its conclusion that mother should have sole custody.

¶ 14. We faced a similar situation in *Mayer*. In that case, neither party requested findings, and the court made findings on its own initiative. We reversed and remanded the family court's custody award because the court simply concluded that it was in the child's best interests to be in the custody of father without making any findings as to why the child would be better off with one parent rather than the other. *Mayer*, 144 Vt. at 216-17, 475 A.2d at 239-40. As in this case, the court's findings in *Mayer* indicated that either parent would have been appropriate as the custodial parent. *Id.* at 215, 475 A.2d at 239. We reiterated that trial courts must "state the dispositive or key facts in close cases." *Id.* at 217, 475 A.2d at 240.

¶ 15. Similarly, in *Jensen v. Jensen*, 139 Vt. 551, 433 A.2d 258 (1981), neither party requested findings, and the court made findings on its own initiative. We reversed and remanded the court's custody award because the court had merely concluded that its custody decision was in the children's best interests without offering any factual findings in support of its conclusion. *Id.* at 553, 433 A.2d at 260. We explained that the court's failure to identify the facts that dictated its conclusion denied this Court the assistance that we needed to engage in meaningful appellate review. *Id.* As we stated, the family court's failure to make necessary findings left this Court "to speculate as to the basis upon which the trial court made its findings and reached its decision. This we will not do." *Id.*

¶ 16. In this case, as in the cases discussed above, the family court's findings leave us with no way to determine whether and how the family court applied the best interest factors, or how it reached its conclusion to award mother sole legal rights and responsibilities. See *Pigeon v. Pigeon*, 173 Vt. 464, 465-66, 782 A.2d 1236, 1237-38 (2001) (mem.) (where family court made no reference to its consideration of the best interest factors, nor stated that its decision was in child's best interests, and also failed to explain what factors made mother the better parent to make medical decisions on child's behalf, Supreme Court could not determine whether or how family court applied best interest factors, or how it reached its conclusion to award mother sole legal rights and responsibilities); see also *Nickerson v. Nickerson*, 158 Vt. 85, 88-89, 605 A.2d 1331, 1333 (1992) (conclusions of law must be supported by findings of fact and an explanation of how the court reached its decision). We therefore reverse and remand the question of whether the transfer of sole rights and responsibilities to mother was in Ben's

best interests to the family court for additional findings.

*Affirmed in part, reversed and remanded in part.*

¶ 17. **Katz, Supr. J.,** dissenting. I disagree with the final portion of the majority opinion, remanding the matter for failure of the trial court to make findings of fact regarding the best interests of the child.

¶ 18. There is no question but that the trial court did not make findings on that key issue. It did make rudimentary statements of the facts relied upon in concluding that joint custody was no longer workable, but failed to say anything about which parent was more suited to be the resulting, sole custodian. The majority is quite correct in noting that the quoted statement from the bench does not constitute findings or any analysis of the statutory custody criteria established by 15 V.S.A. § 665(b). Instead, the statement is more properly characterized as a reassuring or hortatory utterance from the court, perhaps made to relieve any hurt on the part of the father.

¶ 19. My disagreement stems solely from the clear words of Rule 52(a) of the civil rules, which require that "the court shall, upon request of a party participating in the trial made on the record or in writing within 5 days after notice of the decision ... find the facts specially and state separately its conclusions of law thereon." V.R.C.P. 52(a)(1). Rule 52(a) applies to family court proceedings. V.R.F.P. 4(a)(1). It is recognized that no such request was ever made by either party here. The majority correctly cites *Pigeon v. Pigeon*, 173 Vt. 464, 782 A.2d 1236 (2001) (mem.), *Nickerson v. Nickerson*, 158 Vt. 85, 605 A.2d 1331 (1992), *Mayer v. Mayer*, 144 Vt. 214, 475 A.2d 238 (1984), and *Jensen v. Jensen*, 139 Vt. 551, 433 A.2d 258 (1981), as reversing for inadequate findings of fact. But none of these cases discuss the explicit requirement of Rule 52(a) that findings must be made only if timely requested. In failing to address that distinction, the ruling in this case does more than merely follow the cited precedent. Instead, the Court is now specifically departing from the rule. In effect, the law of Vermont now becomes: "At least in custody cases, findings must be made, regardless of whether or not requested." This is a plain overruling of at least several applications of the straightforward wording of the rule: *Am. Trucking Ass'ns v. Conway*, 152 Vt. 363, 375, 566 A.2d 1323, 1331 (1989); *Viskup v. Viskup*, 149 Vt. 89, 92, 539 A.2d 554, 557 (1987); *Chaker v. Chaker*, 147 Vt. 548, 549, 520 A.2d 1005, 1006 (1986); *Kaplan v. Kaplan*, 143 Vt. 102, 104, 463 A.2d 223, 224 (1983); *Moulton v. Moulton*, 134 Vt. 125, 127, 352 A.2d 680, 681 (1976). No explanation for this change in course is offered.

¶ 20. It would also be unwise to imply that any statements by the trial court which might constitute findings or reasons behind its decision triggers the duty to make findings as if requested by a party under Rule 52. Although courts may certainly make findings on their own volition, and such should not be discouraged, the implication in the majority decision sends exactly the wrong signal: Better not to say anything, for even a little will trigger some greater duty and thereby lead to reversal. Any statement by the trial court as to the reasons for the decision is generally desirable, but it should be within the sound discretion of that court how far to go. This is particularly true regarding an oral statement from the bench at a time when one or more of the participants may have an emotional response. Just because the trial court here stated its reasons for concluding that joint custody was no longer functioning as it should, it did not thereby become bound to issue detailed findings on the best-interests issue.

¶ 21. Vermont's rule, depending as it does on a request from a party, is different from the federal equivalent. Rule 52(a) of the Federal Rules of Civil Procedure mandates findings in any case heard without a jury. F.R.C.P. 52(a); see generally 9A C. Wright & A. Miller, Federal Practice and Procedure § 2574 (1995) (noting that findings are required in all actions and may not be waived). The Vermont rule was derived from Rule 52 of the Maine Rules of Civil Procedure. Reporter's Notes, V.R.C.P. 52. Like Vermont's Rule 52(a), Maine's rule does not require the court to issue factual findings in all nonjury cases. Me. R. Civ. P. 52(a); *Bayley v. Bayley*, 602 A.2d 1152, 1154 (Me. 1992). Rather, the rule mandates findings only when timely requested by a party. Me. R. Civ. P. 52(a); *Bayley*, 602 A.2d at 1154.

¶ 22. The distinction between the federal rule and that adopted in Vermont and Maine is an important one because it affects the standard of review on appeal. Maine precedents interpreting Rule 52(a) distinguish between cases where the parties requested findings and cases where no such timely requests were made. When findings are not timely requested and the court's judgment is challenged on appeal, the Maine Supreme Judicial Court assumes the trial court found all facts that are necessary to support the judgment. *Powell v. Powell*, 645 A.2d 622, 623-24 (Me. 1994). The same standard applies if a trial court issues findings that are incomplete, so long as no party timely requested findings pursuant to Rule 52(a). *Id.*; see also *In re Zoe M.*, 2004 ME 94, ¶ 10, 853 A.2d 762 (addressing grandmother's challenge to custody order as lacking specific finding on child's best interest, court explains that in absence of request for more findings under Rule 52, court assumes that lower court made all of the findings necessary to support its decision); cf. *Bayley*, 602 A.2d at 1154 (explaining that

where party requests specific findings under Rule 52, reviewing court will not assume findings in support of judgment; findings must be sufficient on contested issues to support judgment). Arizona has adopted the same standard under its version of Rule 52(a), with language nearly identical to V.R.C.P. 52(a) and Me. R. Civ. P. 52(a). 16 A.R.S. R. Civ. P., Rule 52(a); see also *Pizziconi v. Yarbrough*, 868 P.2d 1005, 1009 (Ariz. Ct. App. 1993) (reaffirming the principle that in absence of request for findings, appellate court will "assume that the trial court found every controverted issue of fact necessary to sustain its decision and the judgment will be upheld if there is reasonable evidence to support it"). An intermediate appellate court in Arizona explained the standard under Rule 52(a) this way:

> [A]s a general rule, an appellate court may infer that the trial court has made the additional findings necessary to sustain its judgment. This principle applies as long as the additional findings are reasonably supported by the evidence and are not in conflict with any of the trial court's express findings. However, the principle does not apply when a party has requested findings of fact pursuant to Rule 52(a).

*Elliott v. Elliott*, 796 P.2d 930, 937 (Ariz. Ct. App. 1990) (citations omitted). Parenthetically, the standard of review consonant with the present rule does not create work for the appellate court. Whether findings were made or not in the trial court, it remains appellee's duty to point out where the record supports the decision on appeal.

¶ 23. Vermont's Rule 52(a) must provide the basis for decision here. Any view that Rule 52(a) should be altered is best handled straight on, by suggestion to the Advisory Committee and possible

amendment. It should not be accomplished by implication or accident.

¶ 24. Reviewing the record in this case under the proper standard, the decision of the family court is well supported. Father conceded at oral argument that the boy was living mostly with his mother, in Vergennes, at the time of trial. Mother would therefore seem to have become the "primary care provider." 15 V.S.A. § 665(b)(6). The record contains numerous references to the child's ties to the Vergennes school and its after-school activities. *Id.* § 665(b)(4). Finally, the extensive email record father submitted as evidence before the family court demonstrates a failure on his part to foster a positive and cooperative relationship with the mother, relating to the child. *Id.* § 665(b)(5), (b)(8). Instead, the record shows a father more given to laying down his own point of view as the final word, whether on counseling, mediation, or after-school activities. According the deference to which the family court is due, particularly in the absence of any request for findings, its decision is amply supported by the record.

¶ 25. I would therefore affirm the decision of the family court in full. I am authorized to state that Justice Reiber joins this dissent.