NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 11

No. 2018-210

| | |
|---|---|
| Michele L. Wright | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Family Division |
| | |
| Dean J. Kemp | December Term, 2018 |

Elizabeth D. Mann, J.

Elizabeth A. Kruska of Elizabeth A. Kruska, PLLC, Woodstock, for Plaintiff-Appellee.

Dean Kemp, Pro Se, Claremont, New Hampshire, Defendant-Appellant.


PRESENT: Reiber, C.J., Skoglund, Robinson and Eaton, JJ., and Morris, Supr. J. (Ret.), Specially Assigned

¶ 1. **MORRIS, Supr. J. (Ret.), Specially Assigned.** Father appeals the superior court's decision granting mother's motion to modify parental rights and responsibilities and permitting father to have contact with the parties' minor child only if the child agrees. We affirm the modification of parental rights and responsibilities, but reverse and remand the parent-child contact order.

¶ 2. The parties' daughter was born in July 2002. In November 2012, the family division of the superior court entered a final order awarding primary legal rights and responsibilities for daughter to mother, subject to an obligation to consult with father prior to making any major decisions. The court ordered the parties to share physical rights and responsibilities. The schedule set forth in the order called for daughter to spend approximately

half of her time with each parent. The parties were required to attempt to resolve any disputes about parenting issues through mediation before returning to court.

¶ 3. In August 2017, father filed a motion to enforce parent-child contact. He claimed that mother had consistently interfered with his contact with daughter and recently had prevented him from seeing daughter at all. Mother denied father's allegations that she had interfered with his contact with daughter. She asserted that daughter, who was now fifteen years old, felt uncomfortable and anxious around father and no longer wanted to have contact with him. Mother asked the court to appoint counsel for daughter so that daughter could testify on her own behalf. Mother also moved to modify the November 2012 order to give her sole legal and physical responsibilities for daughter. She sought to modify the parent-child contact order so that overnight visits were no longer required and daughter could end contact with father if daughter felt uncomfortable. The court initially denied both parties' motions because they had not attempted to mediate their dispute before coming to court.

¶ 4. After an unsuccessful attempt at mediation, the parties renewed their motions. The court appointed a guardian ad litem for daughter and scheduled an evidentiary hearing on parental rights and responsibilities for March 15, 2018. In the meantime, it ordered that father be allowed contact with daughter for at least one hour per week in a public location.

¶ 5. The day before the March 2018 hearing, mother asked the court to schedule a separate hearing to permit testimony from daughter.[1] She argued that "certain events had occurred" between father and daughter, causing daughter to express a desire not to have contact with father, and that daughter's testimony was necessary because only she could testify about those events. Father opposed mother's request for daughter to testify, arguing that it was not appropriate for daughter to testify about why no visitation agreement had been reached, or "to address activity

---

[1] A separate hearing was necessary because daughter was on a school trip at the time of the March 2018 hearing.

2

that is simply a recurrence of the same behavior/refusals which the Court was informed about at the previous hearing." He further argued that daughter could not testify unless the court appointed a lawyer to represent her.

¶ 6.     At the beginning of the March 2018 hearing, mother's attorney suggested that the court hear from the parties' other witnesses before deciding whether daughter should be called to testify. Father's attorney did not object. After hearing testimony from mother, daughter's therapist, daughter's school principal, and father, the court granted mother's motion to set another hearing to allow daughter to testify. Father's attorney asked if he could submit questions for the court to ask daughter. The court ordered the parties to file a stipulated list of proposed questions prior to the hearing.

¶ 7.     The second hearing took place in May 2018. At father's request, the court appointed counsel for daughter. Opportunity was provided for daughter to consult with counsel, and she did so. The court then questioned daughter briefly in chambers, in the presence of her attorney and guardian ad litem. Daughter's testimony was recorded and broadcast into the courtroom to be heard by the parties and their counsel.

¶ 8.     The court subsequently issued a written decision granting mother's motion to modify parental rights and responsibilities and parent-child contact and denying father's motion to enforce the original order. The court found that the parties' motions were triggered by an incident in July 2017. Daughter was with mother and stepfather at their summer home in Island Pond on father's birthday. Father was scheduled to have contact with daughter that day. Daughter wanted to remain in Island Pond and tried to convince father to delay parent-child contact. An argument ensued. Father then posted disparaging comments about stepfather on Facebook.[2]

_____

[2] Father's Facebook posts were not introduced into evidence. On appeal, father argues that he should have been permitted to present additional, unspecified evidence about stepfather. Father failed to preserve this claim for our review by raising it before the family court. See Greene v. Bell, 171 Vt. 280, 287 n.3, 762 A.2d 865, 871 n.3 (2000) (explaining that this Court will not address claim on appeal where specific objection was not raised below).

Daughter saw father's posts and became deeply upset. She began crying and screaming that she hated father. She blocked him on her Facebook account and blocked his calls and text messages on her cell phone.

¶ 9. Daughter later tried to talk to father about her feelings but was unsuccessful. She wrote a letter to father explaining that his negativity caused her to feel stressed, anxious, confused, and unhappy, and that she did not feel comfortable being around him as a result. In the letter, she asked father not to contact her and to consider engaging in counseling. At the time she wrote the letter, daughter was fifteen years old. The letter was admitted as an exhibit at the March 2018 hearing. The court found that daughter wrote the letter of her own accord and was not influenced by mother or any other person in doing so.[3]

¶ 10. The court found that father loved daughter but was unable to see how his interactions with daughter and his reactions to situations created stress and anxiety for her. It found that daughter had expressed reservations and concerns about spending time with father at various times over the years. At times, she had tried to avoid going to his home, and she had left his home during a scheduled visit. This behavior had increased over time, but father's actions in July 2017 had led daughter to express a desire to cease contact completely. The court concluded that the breakdown in their relationship constituted a real, substantial, and unanticipated change in circumstances warranting modification of the prior order.

¶ 11. The court then analyzed whether a modification of the prior order was appropriate under the best-interests factors set forth in 15 V.S.A. § 665(b). The court found the first, third, fourth, and sixth statutory factors favored mother. Specifically, it found that although father loved daughter, there had been a breakdown in their relationship that father was unable to see, and he

---

[3] The court also found that daughter "is a mature young lady who would make any parent proud. She has great poise and is able to express her thoughts well both verbally and in writing. She is thoughtful and has good insight into her emotions as well as her relationships with those around her."

had not demonstrated an understanding of how his own behavior contributed to daughter's emotional needs and struggles. It found that daughter's developmental needs were now primarily emotional and that mother was able to meet those needs by supporting her participation in therapy. Father, on the other hand, did not support daughter's participation in therapy, believing that her involvement in treatment was influenced by mother. The court found that requiring daughter to continue to participate in the weekly overnight visits with father called for by the original order would have a significant negative impact on daughter. Removing that requirement would be a positive change because it would alleviate the stress and anxiety she experienced in anticipation of visits with father. Finally, the court found that although the parents had shared primary caregiving responsibilities in the past, daughter's relationship with father was now extremely strained, in contrast to her close relationship with mother. The court found the other statutory factors to be neutral or inapplicable. Notably, it found that both parents were able to foster a positive relationship with the other parent, implicitly rejecting father's claims that mother was attempting to alienate daughter from father.

¶ 12. The court concluded that mother was better suited to meet daughter's emotional and developmental needs, and that it was in daughter's best interests for mother to have sole physical rights and responsibilities. It ordered that "[f]ather may have such parent child contact with [daughter] as [daughter] requests." It permitted father to communicate with daughter through mail or her therapist and required mother to provide a quarterly report to father about daughter's school activities, progress, and medical status. The court declined to modify the prior order's assignment of legal rights and responsibilities. Father appealed.

¶ 13. On appeal, father argues that the family court erred by calling daughter as a witness. He also challenges the court's decision to modify the previous order governing parental rights and

responsibilities to effectively end his contact with daughter.[4] We conclude that father failed to preserve his arguments regarding daughter's testimony and that the court's determination to modify physical rights and responsibilities is amply sustainable, based upon its detailed findings of fact, proper calculus, and conclusions. However, we reverse and remand for the court to reconsider its parent-child contact order.

## I. Testimony of Minor Child

¶ 14. We first consider father's arguments regarding the court's decision to hear testimony from daughter. The family court may call a minor child as a witness in a proceeding concerning parental rights and responsibilities if it finds after hearing that the child's testimony is necessary to determining the custody issue, the probative value of the testimony outweighs the potential detriment to the child, and the evidence sought is not otherwise available. 15 V.S.A. § 594(b); V.R.F.P. 7; Cameron v. Cameron, 137 Vt. 12, 14, 398 A.2d 294, 296 (1979) (explaining that family court has discretion to permit child testimony on issue of custody if such testimony is in child's best interests). "The examination of the child may be conducted by the court in chambers in the presence of such other persons as the court may specify and shall be recorded by a court reporter." 15 V.S.A. § 594(c). The statute requires the court to appoint counsel for a child that is called as a witness. Id. § 594(b).

¶ 15. Father does not challenge the court's compliance with the above statutory requirements. Rather, he argues that he did not want daughter to testify because mother allegedly manipulated her testimony. "[T]o preserve an issue for appeal, a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it."

---

[4] Father included several documents in his printed case that were not originally filed with the family court and are therefore not part of the record. See V.R.A.P. 10(a) (stating that record on appeal consists of original documents and exhibits filed in superior court, transcript, and docket entries), 30(a) (listing documents that may be included in printed case). Mother's motion to strike these documents and the portions of father's brief referring to them is granted. We have not considered this information in addressing the merits of the appeal.

Sundstrom v. Sundstrom, 2004 VT 106, ¶ 21, 177 Vt. 577, 865 A.2d 358 (mem.) (quotation omitted). As noted above, father did oppose mother's initial motion to have daughter testify on the grounds that the sought-after testimony was otherwise available and the court had not yet appointed an attorney for daughter.[5] However, at no point did he argue that daughter's testimony should be excluded due to mother's alleged improper influence. By failing to raise this specific issue below, father failed to preserve it for our review. Id.

¶ 16. Father also argues that it was error for the court to consider the guardian ad litem's opinion regarding whether daughter should testify. Neither father nor his attorney raised this argument below. To the contrary, when the family court asked the parties if they objected to hearing from the guardian ad litem, father's attorney responded, "No." Father therefore waived any objection to this procedure, which is expressly permitted by the Vermont Rules for Family Proceedings.[6] See V.R.F.P. 7(f)(2) (providing, in part, that guardian ad litem may speak on record at evidentiary hearing if attorney for child has been appointed and parties agree, or court requests, that guardian ad litem speak).

II. Modification of Parental Rights and Responsibilities and Parent-Child Contact

¶ 17. Although we reject father's claims of procedural error, we nevertheless agree with him that the family court's decision on parent-child contact must be reversed. By modifying the existing order to place daughter—who has repeatedly expressed that she does not wish to see father at all—in control of contact with him, the family court effectively terminated father's parent-child

_____

[5] Both of these objections were addressed by the family court. The court appointed counsel for daughter prior to her testimony. Additionally, it found that daughter's testimony was necessary and otherwise unavailable because the parties disputed whether she wrote the letter to father asking to stop contact and whether it reflected her true feelings, and only daughter could conclusively settle that dispute. Daughter was nearly sixteen years old at the time of her testimony, which was carefully and appropriately approached by the trial judge in both tenor and substance of her inquiries and interactions with daughter.

[6] Father claims that his attorney disregarded his wishes by acquiescing to the procedures followed by the family court. The record before us provides no basis to support father's contention.

contact. The court's order was erroneous because it was unsupported by clear and convincing evidence that terminating contact with father was necessary to protect daughter's welfare and because it provided no pathway for father to eventually resume contact. We therefore reverse and remand for the court to reconsider the parent-child contact order.

¶ 18. Modification of an order governing parental rights and responsibilities and parent-child contact involves a two-step process. First, the family court must find that there has been a "real, substantial and unanticipated change of circumstances." 15 V.S.A. § 668(a). "There are no fixed standards to determine what constitutes a substantial change in material circumstances; instead, the court should be guided by a rule of very general application that the welfare and best interests of the children are the primary concern in determining whether the order should be changed." Maurer v. Maurer, 2005 VT 26, ¶ 7, 178 Vt. 489, 872 A.2d 326 (mem.) (quotation omitted). We review this threshold determination for abuse of discretion and will not reverse unless the court "exercised its discretion on grounds or for reasons clearly untenable, or it exercised its discretion to a clearly unreasonable extent." Id. Here, we conclude that the court acted within its discretion in determining that the complete breakdown in the relationship between father and daughter constituted a substantial change in circumstances to trigger modification of the underlying custody order. See Brown v. Erbstoesser, 928 N.Y.S.2d 92 (App. Div. 2011) (holding that "[a] sufficient change may be shown where, as here, the desire of the children to visit the noncustodial parent has changed").

¶ 19. If the family court determines that changed circumstances exist, it must then consider whether the best interests of the child require a change in parental rights and responsibilities or parent-child contact. 15 V.S.A. § 668(a). The court has "broad discretion" in deciding the child's best interests, and we will uphold its conclusions if they are supported by the factual findings and the record. Maurer, 2005 VT 26, ¶ 10. "We will, however, reverse if the

8

court's findings are not supported by the evidence, or if its conclusions are not supported by the findings." Spaulding v. Butler, 172 Vt. 467, 475, 782 A.2d 1167, 1174 (2001) (citation omitted).

¶ 20.    We first address the court's decision that it was in daughter's best interests to award sole physical rights and responsibilities to mother.[7]  It is important to note that this case does not involve a transfer of sole physical custody from one parent to another, and thus does not involve the kind of "violent dislocation" inherent in such cases.  Cf. Kilduff v. Willey, 150 Vt. 552, 555, 554 A.2d 677, 680 (1988).  The evidence shows that the parties were unable to reach an arrangement that would enable them to continue sharing physical custody due to the breakdown in the relationship between father and daughter.  Thus, "a disruption of the custodial arrangement in this case was inevitable," and the family court "was merely in the position of deciding what was in the best interests of the [child]: sole custody with mother or sole custody with father."  Hoover v. Hoover, 171 Vt. 256, 259-60, 764 A.2d 1192, 1194 (2000); see also 15 V.S.A. § 665(a) (providing that where parents cannot agree to share parental rights and responsibilities, court shall award rights and responsibilities primarily or solely to one parent).  The court properly assessed the statutory criteria and determined that several factors weighed in favor of giving sole physical rights and responsibilities to mother, who had a healthy relationship with daughter and was better able to support daughter's emotional and therapeutic needs.  The court's decision is supported by its findings and the record.

¶ 21.    Father maintains that the present state of affairs was created by mother, who he claims has interfered in his relationship with daughter by constantly criticizing him and isolating daughter from him and his family.  We have recognized that "conduct by one parent that tends to alienate the child's affections from the other" may be grounds for denying a change in custody. Renaud v. Renaud, 168 Vt. 306, 309, 721 A.2d 463, 465 (1998).  However, father provided little

---

[7] It is unclear from the briefing whether father, who is self-represented, is challenging both the court's award of sole physical rights and responsibilities to mother and its decision on parent-child contact, or just the latter.  To avoid confusion on remand, we review both parts of the order.

specific evidence below to support this contention beyond his own beliefs. For her part, mother denied that she had interfered with their relationship and testified that daughter's feelings were her own. Daughter likewise testified that father's behavior had hurt her, that he refused to listen to her or accept that he was at fault, and that she had written the letter to him so that she could express her feelings without having him interrupt or change the subject. The family court concluded that alienation by mother was not a factor in this case. As the trier of fact, the court was in the best position to judge the credibility of the witnesses, and its findings on this point were not clearly erroneous. See Payrits v. Payrits, 171 Vt. 50, 53, 757 A.2d 469, 472 (2000). We therefore see no reason to disturb the court's award of sole physical rights and responsibilities to mother.

¶ 22. We are unable to reach the same conclusion regarding the court's decision to modify parent-child contact. The Legislature has explicitly provided that "it is in the best interests of [the] minor child to have the opportunity for maximum continuing physical and emotional contact with both parents, unless direct physical harm or significant emotional harm to the child or a parent is likely to result from such contact." 15 V.S.A. § 650; see also id. § 668a(c) (providing that court shall enforce noncustodial parent's visitation rights unless not in best interests of child). "It is conceivable that a court could find visitation so inimical to the interests of a child that visitation would be greatly circumscribed or even denied." Fenoff v. Fenoff, 154 Vt. 450, 452, 578 A.2d 119, 120 (1990); see also Lane v. Schenck, 158 Vt. 489, 499, 614 A.2d 786, 791 (1992) ("15 V.S.A. § 650 does not promote visitation at all costs."). But, as we have repeatedly stated, due process prohibits a court from indefinitely suspending all contact between a parent and child without first finding by clear and convincing evidence that any contact would be against the child's best interests.[8] DeSantis v. Pegues, 2011 VT 114, ¶ 35, 190 Vt. 457, 35 A.3d 152; Gabriel v.

---

[8] We have held that a court may temporarily suspend parent-child contact based on a preponderance of evidence showing that suspension is in the child's best interests. See Groves v. Green, 2016 VT 106, ¶ 22, 203 Vt. 168, 154 A.3d 507 (affirming order which temporarily suspended father's parent-child contact while his pending criminal charges for domestic assault against mother were resolved); Weaver v. Weaver, 2018 VT 38, ¶ 36, __ Vt. __, 186 A.3d 1119

Pritchard, 173 Vt. 452, 455, 788 A.2d 1, 5 (2001) (mem.); Mullin v. Phelps, 162 Vt. 250, 267, 647 A.2d 714, 724 (1994).

¶ 23. We first recognized the above rule in Mullin v. Phelps, an appeal by a father from a family court decision that transferred custody of the parties' minor sons from the father to the mother and conditioned any contact between the father and the children on the father's acknowledgment that he had sexually abused them. Although we concluded that there was sufficient evidence to support the court's finding by a preponderance of the evidence that father had sexually abused the younger child, we held that this was insufficient as a matter of due process to terminate all contact between the father and the children. Id. at 262-63, 647 A.2d at 721. Our decision was grounded on the due process guarantees of the U.S. and Vermont Constitutions, and more specifically on the U.S. Supreme Court's decision in Santosky v. Kramer, 455 U.S. 745, 747-48 (1982), that due process requires a state to present clear and convincing evidence to terminate parental rights. Mullin, 162 Vt. at 263, 647 A.2d at 722. We held that this principle extended to divorce or custody proceedings because the liberty interest of a parent in maintaining parent-child contact is similar to the parents' interest in a termination proceeding. Id. at 267, 647 A.2d at 724. Thus, we concluded that "due process required the court either to find the existence of sexual abuse by clear and convincing evidence or to permit, at minimum, continued contact between the father and the boys consistent with their safety." Id.

¶ 24. A few years later, in Gabriel v. Pritchard, we affirmed a family court order suspending parent-child contact between a father and a daughter where the court found by clear and convincing evidence that contact was not in the child's best interests. 173 Vt. at 455, 788 A.2d at 5-6. The court's decision was supported by its findings that the father had repeatedly failed to establish consistent contact with the child and behaved bizarrely and inappropriately when he did

(affirming order suspending mother's contact for sixty days based on evidence that contact with mother was detrimental to child's welfare). The order in this case suspended father's contact with daughter indefinitely, and therefore is subject to the more stringent standard of proof.

11

have visits, causing drastic changes in the child's behavior—including bathroom accidents, violence, periods of withdrawal, and severe emotional distress. We held that the evidence and findings were sufficient to satisfy the standard set forth in Mullin for an order permanently suspending parent-child contact. Id. We have reaffirmed the Mullin standard in subsequent cases. See, e.g., Knutsen v. Cegalis, 2016 VT 2, ¶ 33, 201 Vt. 138, 137 A.3d 734 (affirming order suspending mother's parent-child contact while child engaged in therapy for specific time period and requiring custodial parents to engage in therapeutic reunification process within that time period, where order was based on clear and convincing evidence that immediate resumption of contact with mother would put child at significant risk of mental health problems); DeSantis, 2011 VT 114, ¶ 35 (holding that although preponderance of evidence supported court's finding that father sexually abused daughter, court erred in halting all contact absent showing by clear and convincing evidence that any visitation would be detrimental to daughter's best interests).

¶ 25.    Here, the court did not find by clear and convincing evidence that any further contact with father would be detrimental to daughter's best interests, and we hold that the record would not support such a finding. There is no evidence, for example, that father abused daughter. Cf. DeSantis, 2011 VT 114, ¶ 27; Mullin, 162 Vt. at 262-63, 647 A.2d at 721. Nor does the record show that father repeatedly failed to establish any meaningful contact with daughter or behaved so inappropriately during visits that it was in daughter's best interests to halt all contact. Cf. Gabriel, 173 Vt. at 455, 788 A.2d at 5-6. Rather, it appears from the record that father has been an involved, loving parent throughout daughter's life and maintained regular and frequent contact with her until the July 2017 incident. Although the court found that daughter had "observed a great deal of negativity in her day to day interactions with" father that caused her to be stressed, expressed reluctance to spend time with father "at various times throughout the years," and requested that father not contact her after his inappropriate Facebook posts, this is insufficient to amount to clear and convincing evidence that any future contact with father, even in a supervised or therapeutic

setting, would be detrimental to daughter's best interests. The court's parent-child contact order therefore cannot stand.

¶ 26. Our holding, as in any case of this nature, is not to be construed as mandating wholly unconditional contact between parent and child where such would clearly not be in the child's best interests. As we have recognized, an order temporarily restricting parent-child contact may be appropriate in certain cases, even if indefinite suspension would not be supported by clear and convincing evidence. See, e.g., Groves, 2016 VT 106, ¶ 22. However, any order restricting contact in this manner must provide a clear "road map" setting forth clear expectations of the parent so that he or she understands what steps are needed to reestablish the relationship. Further, the specific terms and conditions imposed by the court—such as, for example, parental engagement in counseling, or timelines or phases for re-engagement and progression in parent-child contact—must be reasonable and reasonably attainable, assuming parental engagement in the prescribed process, and consistent with the child's best interests. See DeSantis, 2011 VT 114, ¶ 38; Mullin, 162 Vt. at 267, 647 A.2d. at 724.

¶ 27. For the above reasons, we conclude that the family court's decision regarding parent-child contact must be reversed and remanded for it to consider contact for father upon such terms and conditions as the court finds to be in the current best interests of daughter.

The family division's award of sole physical parental rights and responsibilities to mother is affirmed. The parent-child contact order is reversed and remanded for the court to consider appropriate contact for father consistent with daughter's best interests and this decision.

FOR THE COURT:

_____
Superior Judge (Ret.), Specially Assigned

13